## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

_____

ETHEL ANDERSON, WANDA
MEADOWS, and JACQUELINE
LUONGO,

          Plaintiffs,                        Case No.:

v.

CENTURION OF FLORIDA, LLC, an
out-of-state corporation registered and
doing business in Florida; and
ADER BENOIT, in his individual
capacity,

          Defendants.

_____

## COMPLAINT
## <ins>AND DEMAND FOR A JURY TRIAL</ins>

## <ins>PRELIMINARY STATEMENT</ins>

1.    Plaintiffs Ethel Anderson, Wanda Meadows, and Jacqueline Luongo (Plaintiffs) bring this action to challenge the violations of their constitutional rights based on a medical provider, Defendant Ader Benoit, M.D. (Benoit), sexually assaulting them during scheduled gynecological appointments at Lowell Correctional Institution in Ocala, Florida. Defendant Benoit abuses his power and medical license by unlawfully fondling, penetrating, physically injuring, and demeaning patients seeking gynecological care while incarcerated.

2.      Plaintiffs reported this sexual abuse even though they fear retaliation, including losing privileges, being isolated in solitary confinement, being disciplined, or being subjected to other unfair treatment. Their fears are well founded. After conducting a multi-year investigation of systemic sexual abuse at Lowell Correctional Institution (Lowell CI), the U.S. Department of Justice issued a report in 2020 finding that this type of retaliation against incarcerated people who reported sexual abuse was common at the prison.[1]

3.      Defendant Centurion of Florida, LLC (Centurion), the Florida Department of Corrections' contracted medical care provider at Lowell CI, has an unlawful policy, practice, and custom of failing to protect Plaintiffs and other patients through deliberate indifference to a substantial risk of serious harm from sexual assault. Centurion's failure to protect Plaintiffs violates the Eighth Amendment to the U.S. Constitution.

4.      Defendant Centurion's deliberate indifference to this substantial risk of serious harm, and harm, from sexual abuse, results in Plaintiffs, and other patients at Lowell CI, facing unacceptable and dangerous options: risk sexual assault or forego necessary gynecological care. Because Centurion has failed to

---

[1] *See generally* Investigation of the Lowell Correctional Institution – Florida Department of Corrections (Ocala, Florida), U.S. Department of Justice Civil Rights Division, U.S. Attorney's Office for the Middle District of Florida (December 22, 2020), available at: https://www.justice.gov/d9/press-releases/attachments/2020/12/22/2020-12-22_lowell_cripa_notice_0.pdf

protect patients at Lowell CI from sexual assault and allowed this abuse to continue for years, Plaintiffs, and others, refuse necessary medical care for this reason, further risking their health and safety.

5.      Plaintiffs seek injunctive and declaratory relief and damages against Centurion for the policy, practice, and custom of failing to protect them from a substantial risk of serious harm from sexual abuse in violation of their rights under the Eighth Amendment.

6.      Plaintiffs also bring this action against Defendant Benoit, in his individual capacity, based on his sexual assault of each Plaintiff while incarcerated at Lowell CI in violation of their rights under the Eighth Amendment to the U.S. Constitution.

7.      Plaintiffs seek declaratory and injunctive relief to remedy the violations of their rights, including, but not limited to, allowing them and other patients at Lowell CI to see another clinician; and awarding each with compensatory, punitive, and nominal damages against Defendant Benoit in his individual capacity. Without judicial intervention, Plaintiffs, and other patients at Lowell CI, will continue to suffer a substantial risk of serious harm and be harmed from sexual assault by Defendant Benoit.

## JURISDICTION AND VENUE

8.      Plaintiffs' claims for relief are predicated upon 42 U.S.C. Section 1983 which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, including the Eighth and Fourteenth Amendments to the U.S. Constitution.

9.      This Court has jurisdiction over each Plaintiff's claim pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) & (4) in that this action seeks to redress the deprivation, under color of state law, of rights secured to Plaintiffs under federal law and the U.S. Constitution.

10.      Each Plaintiff seeks declaratory and injunctive relief under 28 U.S.C. §§ 1343, 2201, 2202, and 42 U.S.C. § 1983 for injury to her rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

## VENUE

11.      Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims have occurred in this District and Defendants are located in this District.

## **PARTIES**

### *Plaintiffs*

12.     Plaintiff Ethel Anderson (Anderson) is a 41 year-old woman. She is incarcerated at Lowell Correctional Institution Annex located in Marion County, Florida. She was incarcerated at Lowell CI Annex during the events described in this Complaint.

13.     Wanda Meadows (Meadows) is a 50 year-old woman. She currently lives in Hillsborough County, Florida. She was incarcerated at Lowell CI Annex during the events described in this Complaint.

14.     Jacqueline Luongo (Luongo) is a 53 year-old woman. She is incarcerated at the Lowell CI Annex located in Marion County, Florida. She was incarcerated at Lowell CI Annex during the events described in this Complaint.

15.     Plaintiffs Anderson and Luongo have satisfied all conditions precedent to this action, including exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

### *Defendants*

16.     Defendant Centurion of Florida, LLC is an out-of-state corporation registered and doing business in Florida. At all times relevant to this case, Centurion contracted with the Florida Department of Corrections (FDC) to provide

medical care to people incarcerated at Lowell CI, the Lowell CI Annex, and the Lowell CI Work Camp (collectively, Lowell CI).

17.     Defendant Ader Benoit was at all times relevant to this case, a medical doctor working at Lowell CI. He is employed by Centurion. Upon information and belief, he is the only medical doctor employed at Lowell CI to provide gynecological care. Defendant Benoit was acting under color of state law at all times relevant to this case. He is sued in his individual capacity.

18.     At all times material to this action, all correctional and medical staff mentioned herein were duly appointed, qualified, and acting officers, employees, and agents of the FDC and/or Centurion, and were acting under color of state law.

## FACTUAL ALLEGATIONS

### *Lowell CI*

19.     Lowell CI is the largest women's prison in the United States and the oldest women's prison in Florida.

20.     Lowell CI has a compound comprised of a Main Unit, Annex, and Work Camp which, together, can house over 2,400 people.

21.     Lowell CI is a state-operated prison. FDC operates, oversees, and administers all activities at Lowell CI.

22.    FDC is required to provide medical care, including gynecological care, to incarcerated people at Lowell CI. It attempts to fulfill this requirement pursuant to a contract with Defendant Centurion.

23.    As the contracted medical care provider at Lowell CI, Centurion agreed to follow, and must legally follow, all FDC policies, procedures, administrative rules, and federal and state law requirements, including those regarding protecting people in state custody from sexual abuse.

### *FDC's Policies, Procedures, and Practices Regarding Sexual Abuse*

24.    As a state-operated correctional institution, Lowell CI is subject to the Prison Rape Elimination Act (PREA) and accompanying national standards to Prevent, Detect, and Respond to Prison Rape (PREA standards). *See* 34 U.S.C. § 30301, *et seq*.; and 28 C.F.R. part 115, *et seq.* The PREA standards provide notice to jurisdictions of their obligations to protect prisoners from sexual abuse and sexual harassment. *Id.* PREA, and these standards, apply to any acts of sexual harassment or sexual abuse in a state-operated prison such as Lowell CI. *Id.*

25.    FDC's Procedure 602.053, "Prison Rape: Prevention, Detection, and Response," (FDC PREA policy) incorporates PREA's requirements and the PREA standards. FDC's policy mandates zero tolerance for sexual abuse and sexual harassment of prisoners under its jurisdiction. FDC's PREA policy details policies procedures, and practices concerning reporting, detecting, reducing, and

investigating correctional sexual abuse and ensuring an adequate response to allegations of sexual abuse. *Id.*

26.     FDC's contract for services with Centurion requires that all Centurion contractors working at Lowell CI comply with and receive training on FDC policies and procedures, including FDC Procedure 602.053 and a related FDC Health Services Bulletin 15.03.36, entitled "Post Sexual Battery Medical Action."

27.     Under FDC policy, Procedure 602.053(19)(b), the definition of "sexual abuse" includes any of the following acts by a staff member, contractor, or volunteer against an incarcerated person with or without the person's consent:

- contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

- penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

- any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arose, or gratify sexual desire; and

- any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described above.

28.     Every FDC employee, contractor, and volunteer, is required to report any allegation of sexual abuse to FDC. *See* FDC Procedure 602.053(3). There are multiple ways to report sexual abuse to FDC, including verbal reports. *Id.* at

(3)(a)(1). A contractor, employee, or volunteer who fails to report or take immediate action regarding the fear of or actual sexual abuse "will be subject to discipline, up to and including termination." *Id.* at 602.053(4).

29.     Sexual abuse reports involving contractors, employees, and volunteers at FDC institutions are referred to the FDC's Office of the Inspector General (OIG) for investigation. *See* FDC Procedure 108.015 (Sexual Battery, Sexual Harassment, and Sexual Misconduct Investigations) at Section (10)(c). The FDC's OIG can conduct an administrative investigation to determine if FDC policy was violated or a criminal investigation where a case may be referred for possible prosecution. *See* FDC Procedure 108.015.

30.     FDC policy requires each of its prisons to ensure that all contractors and volunteers who have contact with incarcerated people are annually trained on their responsibilities under FDC Procedure 602.053 and related policies. *See* FDC Procedure 602.053(2)(d). This policy provides that training include, *inter alia*, understanding the dynamics of sexual abuse in corrections settings; common reactions to sexual abuse in corrections settings; how to detect and respond to signs of threatened and actual sexual abuse; and how to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities. *See* FDC Procedure 602.053(2)(c). FDC policy also requires that health care practitioners

who regularly work with incarcerated people receive additional specialized

training. *Id.*

31.    All FDC staff, volunteers, and contractors are required to "foster an

environment within their facility that precludes sexual abuse." *See* FDC Procedure

602.053(3)(f). This includes, but is not limited to: taking all reports concerning

sexual abuse seriously; initiating immediate reporting of alleged sexual abuse to

the OIG; promptly reporting any knowledge, suspicion, or information regarding

any staff neglect or violation of responsibilities that may have contributed to an

incident of sexual abuse. *Id.*

32.    Any FDC contractors whose personnel engage in sexual abuse and are

"found guilty" will be disciplined up to and including termination of contract

and/or prohibition from working for FDC, and will be reported to law enforcement

and any relevant licensing bodies. *Id.* at 602.053(9)(e).

### *Existing Policy, Practice, and Custom of Sexual Abuse at Lowell CI*

33.    Plaintiffs' sexual assaults occur in the historic context of a recent

investigation and scathing report by the U.S. Department of Justice (DOJ) in

December 2020. DOJ found Lowell CI and FDC violate incarcerated people's

Eighth Amendment rights though deliberate indifference to a substantial risk of

serious harm from sexual abuse and failing to protect them from this harm. DOJ's

report demonstrates a widespread pattern of staff sexual misconduct by Lowell CI

correctional officers and staff against people incarcerated at the facility that "is severe and prevalent throughout the prison." DOJ also found that prison staff and officials commit and permit such sexual abuses to occur and failed to take timely and reasonable action to remedy the conditions that enabled the abuse to occur. *Id.*

34.     Since issuing its 2020 findings report, DOJ has returned to Lowell CI to continue its investigation, monitoring, and interviews concerning unlawful widespread sexual abuse.

### *Plaintiff Ethel Anderson*

35.     While housed at the Lowell CI Annex, Ethel Anderson had annual gynecology appointments with Defendant Benoit in February 2019 and March 2020. When she saw Defendant Benoit at these times, he sexually assaulted her in a medical exam room during scheduled visits purportedly for a Pap smear[2] and breast examination.

36.     During these visits, Defendant Benoit fondled Plaintiff Anderson's clitoris and vagina by rubbing her clitoris with his finger. Anderson did not make any complaints about her clitoris that would require a clinician to touch it. Anderson was shocked and felt physically violated. Defendant Benoit also put his fingers inside Anderson's vagina. He tried to sexually stimulate her rather than conduct a legitimate examination. She felt physically violated, humiliated, and

---

[2] A Pap smear, also called a Pap test, is a procedure to test for cervical cancer in women. *See*, *e.g.*: https://www.mayoclinic.org/tests-procedures/pap-smear/about/pac-20394841

degraded. Defendant Benoit touched Anderson's clitoris and vagina in ways which were sexual and not medical in nature, and derived sexual gratification from doing so.

37.     Anderson had pelvic and Pap examinations before prison and had never had a doctor or other clinician touch or rub her clitoris during a pelvic examination or put their fingers inside her vagina as Defendant Benoit did. There was no legitimate medical reason for Defendant Benoit to touch and stroke Anderson's clitoris and penetrate her vagina with his fingers in this offensive, inappropriate, and sexualized manner.

38.     During these appointments, Defendant Benoit also roughly pinched, pulled, and squeezed Anderson's breasts and nipples while purporting to do a breast examination. His actions made her feel degraded, like an animal being milked. She felt physically violated and humiliated. Defendant Benoit also made a sexualized and medically unwarranted comment to Anderson that her breasts looked nice. Anderson had breast exams before prison; no clinician had ever pinched, squeezed, or pulled her breasts and nipples in this manner. Anderson had no complaints about her breasts that would require such intrusive and medically unwarranted gestures. Defendant Benoit's actions had no legitimate medical purpose; his actions were done for a sexual purpose.

39.     Defendant Benoit's sexual assault of Anderson during these appointments made her cry, become severely emotionally distressed, and caused her anxiety. Anderson still experiences these feelings when thinking about or recalling what happened during the gynecology appointments with Defendant Benoit.

40.     After these sexual assaults, Anderson believed if she saw Defendant Benoit again he would sexually abuse her. She refused to allow him to conduct any further gynecological visit.

41.     Plaintiff Anderson asked medical staff, including the prison's Health Services Administrator, to see another clinician other than Defendant Benoit for gynecological care. She was told that incarcerated people do not get to pick their providers.

42.     Plaintiff Anderson has had serious medical conditions such as irregular vaginal bleeding and uterine fibroids that require regular gynecological care and monitoring. She is concerned that her inability to receive proper gynecological care could cause these conditions to worsen and expose her to further harm.

43.     Plaintiff Anderson told Dr. Jose Rodriguez, the former Chief Health Officer/Medical Director at Lowell CI, what had happened during her appointments with Defendant Benoit and why she would not see Benoit again for

gynecology. Dr. Rodriguez, a mandatory PREA reporter and the highest level

Centurion medical official at the prison, failed to make a PREA report, failed to

take any action to have the matter investigated, and did not refer Anderson to see

another clinician for gynecology.

44.    Plaintiff Anderson told other medical clinicians at Lowell CI that

Defendant Benoit had sexually abused her and this was why she refused any

gynecology appointments with him. Anderson signed medical refusal forms

regarding any gynecology appointment scheduled with Defendant Benoit. On

information and belief, none of these clinicians made a PREA report.

45.    Anderson discovered that it has been commonly known at Lowell CI

that Defendant Benoit has a reputation among incarcerated people and prison staff

for sexually abusing patients. Prison staff made off-color jokes about it. When

people are listed on a posted appointment sheet to see Defendant Benoit, Anderson

has heard others say they felt sorry for them because of Dr. Benoit's reputation.

Correctional staff also made comments to Anderson that indicated that they knew

about the sexual abuse allegations concerning Defendant Benoit.

46.    Anderson reported the sexual abuse by Defendant Benoit to several

FDC prison staff, including supervisors. None of them made a PREA report or

took any steps to have the complaint investigated or addressed.

14

47.     Through her counsel, on December 27, 2023, Anderson filed a third party grievance to the Lowell CI Warden, Leslee Pippin, alleging sexual abuse by Defendant Benoit. The Warden's response was that the grievance was granted as referred to the FDC Office of the Inspector General for investigation.

### *Plaintiff Wanda Meadows*

48.     In or around December 2021, Wanda Meadows had an appointment with Defendant Benoit at Lowell CI Annex after a sick call due to excessive vaginal bleeding.

49.     Defendant Benoit told Meadows to fully undress. Defendant Benoit remained in the examination room while Meadows undressed.

50.     Even though Meadows' examination was related to unexplained vaginal bleeding, Defendant Benoit conducted a "breast exam," where he aggressively pushed and twisted her nipples and fondled her breasts for an excessive amount of time. Meadows had breast exams before, but never had a clinician pinch, pull, or twist her nipples in this way. Defendant Benoit's actions were sexual and unnecessary, rather than medical.

51.     During this appointment, Defendant Benoit told Meadows to point to the area where she was having a problem. She indicated that she was bleeding vaginally and pointed there. Defendant Benoit told Meadows to touch herself on her vagina. Meadows was afraid to refuse a directive from someone who worked at

15

the prison, so she reluctantly touched her vagina. This was humiliating, degrading, and demeaning.

52.     After requiring her to touch her vagina, Defendant Benoit slapped Meadows' labia and told the nurse that he needed a speculum. He said out loud that he needed a medium speculum, not a small. Meadows felt like Benoit was taunting her about the size of her vagina.

53.     Defendant Benoit inserted a speculum into Meadow's vagina in a painful and aggressive manner. Defendant Benoit pulled the speculum out of Meadows vagina while it was still in an open position. While Defendant Benoit did this, Meadows felt pain and something inside her rip or tear. Meadows cried while this happened. She tried to close her legs but Defendant Benoit forcefully kept them open. Defendant Benoit also very aggressively pushed down on her stomach using a fist. She was shocked and humiliated. Defendant Benoit seemed sexually gratified from what he did to her.

54.     Meadows cried throughout this appointment from Defendant Benoit's abuse and violation of her body. In response to her crying, Defendant Benoit suggested that she needed to see a psychiatrist and look into psychiatric medication. Meadows felt insulted and belittled by his remarks.

55.     After this appointment, Meadows' abdomen was bulging and her vagina looked larger and different. Meadows was seen by another clinician at the

16

prison after the appointment with Defendant Benoit because she had abnormal vaginal bleeding, pain, and thought she could have a possible prolapsed uterus from what Benoit did to her.

56.    Meadows told a clinician at Lowell CI how Defendant Benoit had abused her during the appointment and that she believed he had physically injured her. On information and belief, this clinician did not make a PREA report.

57.    Meadows refused to see Defendant Benoit again for gynecology because he physically injured her and she feared he would sexually abuse her again.

58.    Meadows was released from prison in June 2023. She still experiences vaginal and abdominal pain from the appointment with Defendant Benoit. Her vagina is still misshapen. Thinking about the sexual assault by Defendant Benoit still makes Meadows anxious, cry, and makes her afraid of seeing another clinician for gynecology.

### *Plaintiff Jacqueline Luongo*

59.    Jacqueline Luongo was sexually assaulted by Dr. Benoit at Lowell CI Annex in a medical exam room during a scheduled gynecological visit for a Pap smear and breast examination in January 2021.

60.    During this visit, Defendant Benoit commented about Ms. Luongo's breasts being large, squeezed her nipples, and took an excessive amount of time

touching and fondling her breasts. She found his actions creepy, medically

unnecessary, and unlike other breast examinations she had before prison.

61.     During this visit. Defendant Benoit also purported to do a Pap smear.

He put his fingers inside Luongo's vagina for a very long time. The amount of time

and his manner made Luongo feel like he was enjoying digitally penetrating her in

a sexual way rather than conducting a legitimate medical examination.

62.     Luongo had other pelvic examinations and Pap smears prior to prison.

She does not recall a clinician taking so long to examine her or doing so how

Defendant Benoit did. Luongo found Defendant Benoit's actions and comment

degrading and humiliating.

63.     Luongo told several correctional and medical staff who worked at

Lowell CI Annex what happened during the appointments with Defendant Benoit.

On information and belief, none of these individuals made a PREA report.

64.     Luongo learned from other people at the prison that it was common

knowledge among prisoners and prison employees that Defendant Benoit had a

reputation for sexually abusing patients and touching them in ways unrelated to a

legitimate examination.

65.     Based on this sexual assault, Luongo refuses to receive any further

gynecological care from Defendant Benoit. Luongo fears that if she is forced to see

18

Defendant Benoit again for a gynecological exam, he will sexually abuse her again.

66.     Luongo asked to see a provider other than Defendant Benoit. She was told that she would have to see him for gynecology. Luongo wants to have preventative routine health care and has a history of unusual vaginal bleeding and pain. She is concerned about not being able to see a clinician to receive regular care since she refuses to see Defendant Benoit.

67.     Through her counsel, on December 27, 2023, Luongo filed a third party grievance alleging sexual abuse by Defendant Benoit to the Lowell CI Warden, Leslee Pippin. The Warden's response was that the grievance was granted as referred to the FDC Office of the Inspector General for investigation.

### *Centurion Fails to Protect Patients from Sexual Abuse*

68.     Centurion's contract with FDC requires it to provide all medical services in accordance with federal laws, state laws, and FDC rules, policies, and procedures.

69.     Centurion officials, including its clinicians, have knowledge that there is an unreasonable risk of serious harm from staff sexual abuse for prisoners at Lowell CI based on the DOJ's 2020 report finding a longstanding and widespread pattern of sexual abuse at Lowell CI and that FDC officials showed deliberate

indifference to the abuse. DOJ has continued its investigation into sexual abuse at Lowell CI since its report.

70.    Centurion officials and clinicians know that there is an unreasonable risk of harm from sexual abuse at Lowell CI based on reviews and knowledge of FDC PREA audits of Lowell CI.[3] These audits note that Lowell CI has among the highest number of sexual abuse reports of all FDC institutions statewide. Despite the DOJ's finding of widespread sexual abuse at Lowell CI and the high number of sexual abuse reports during DOJ's investigation period, Lowell CI passed its PREA audits and no FDC investigators substantiated reports of sexual abuse even after FDC disciplined leadership and staff for sexual abuse.[4]

71.    Over several years, Plaintiffs, and other patients, repeatedly told Centurion clinicians and correctional staff at Lowell CI that they had been sexually abused by Defendant Benoit during gynecological visits. Plaintiff Anderson told Dr. Jose Rodriguez, the former Medical Director at Lowell CI what happened during her gynecological visits with Defendant Benoit. Plaintiffs, and other patients, repeatedly asked Centurion staff at Lowell CI to see another clinician, including telling them how Benoit sexually assaulted them.

---

[3] *See* FDC Prison Rape Elimination Act audits, available at:
https://fdc.myflorida.com/prea/index.html

[4] *See*, *e.g.*, "Florida women's prison staff accused of raping inmates, other disturbing abuses, DOJ investigation finds," December 22, 2020, available at:
https://www.clickorlando.com/news/local/2020/12/22/florida-womens-prison-staff-accused-of-raping-inmates-other-disturbing-abuses-doj-investigation-finds/ ; *see also* n.6, supra.

72.     Centurion officials and staff know that they are required to report claims of sexual abuse such as those made by Plaintiffs and other patients at Lowell CI, but deliberately disregarded that obligation, leaving patients at risk of serious harm from sexual abuse by Defendant Benoit. In response to their requests to see another clinician for gynecological visits, Plaintiffs and other patients were told no and that they could not "choose" their provider. They were also told that Defendant Benoit was the only clinician, and the only doctor, that could see patients at Lowell CI for gynecological related issues. It was only after their third party grievances that two Plaintiffs were permitted to see another provider and only after their counsel advocated on their behalf.

73.     Centurion officials and staff were aware that Plaintiffs and other patients at Lowell CI refused numerous times, over several years, gynecological visits scheduled with Defendant Benoit. These refusals were filed in patient's records and reviewed by Centurion staff. Centurion officials regularly audit the medical care at Lowell CI, including reviewing patient care issues such as refusals for service. Centurion officials and employees know that they are required to report suspected sexual abuse and receive training to prevent and detect signs of sexual abuse, but consciously chose to disregard and not investigate the high number of patient refusals involving Defendant Benoit made by numerous patients over

several years. This was a clear warning sign that there was a risk of sexual abuse; Defendant Centurion deliberately disregarded it and failed to address it.

74.    Centurion knew of Defendant's Benoit's sexual abuse of patients from other sources. A woman currently incarcerated at Lowell CI Annex and other patients had to attend a meeting held by a Centurion clinician about their reasons for refusing gynecological care. In that meeting, they specifically told a Centurion employee why they refused to have a gynecological visit with Defendant Benoit and that he had abused them. On information and belief, the Centurion clinician who did this meeting did not make any PREA report.

75.    Centurion officials also had knowledge of PREA reports by Plaintiffs and other patients concerning allegations of sexual assault and sexual abuse against Defendant Benoit through third party grievances filed by Plaintiffs and other sexual abuse survivors through their counsel.

76.    High-level Centurion officials and clinicians at Lowell CI were aware they were required to follow FDC policies and procedures to detect, prevent, report, and investigate sexual abuse but deliberately disregarded these policies and procedures over years. Defendant Centurion's deliberate indifference to the risk of harm from sexual abuse to patients allowed the abuse by Defendant Benoit to continue.

77.     Despite this knowledge and the requirement that Centurion high level officials and clinicians comply with FDC policies and procedures, Centurion has deliberately disregarded the substantial risk, and actual harm, of sexual abuse by Defendant Benoit, failed to report it, failed to investigate it, and failed to take reasonable steps to address it.

78.     This sexual abuse by Defendant Benoit was known by the highest level Centurion official at the prison, the former Lowell CI Medical Director/Chief Health Officer, who heard about it from Plaintiff Anderson, but failed to report it or take any corrective action.

79.     Centurion's officials and high level employees have created and fostered an institutional culture of tolerating Defendant Benoit's sexual abuse of patients; this allows it to continue unabated.

80.     Centurion deliberately disregarded FDC policies and procedures and federal law requiring it to monitor its clinicians to detect signs or indicators of sexual abuse and to take reasonable action to investigate and address any sexual abuse.

81.     The substantial risk of serious harm from sexual abuse of persons in correctional facilities by people who work there and oversee operations, such as

Defendant Centurion, is well known and recognized by professional authorities in the field.[5]

82.    The harms that incarcerated people experience from sexual abuse by those who work in and oversee operations and services in correctional facilities, such as Defendant Centurion, are widely known by professional authorities in the field.[6]

## CLAIMS FOR RELIEF

### COUNT I
### (All Plaintiffs against Centurion)
### *42 U.S.C. § 1983; Eighth Amendment*

83.    Paragraphs 1 through 82 are incorporated herein as if fully set forth.

84.    Defendant Centurion violated Plaintiffs' constitutional rights under the Eighth Amendment to the U.S. Constitution which resulted in Defendant Benoit sexually assaulting each of them during gynecological visits.

85.    Defendant Centurion, and its officials and clinicians, were acting under color of state law at all times material to this action.

---

[5] *See, e.g.*, The Prison Rape Elimination Act (PREA) of 2003, 34 U.S.C. § 30301, *et seq.*; and  National Standards to Prevent, Detect, and Respond to Prison Rape, 77 Fed. Reg. 37106, 37131-32 (June 20, 2012). FDC and Centurion follow these standards enacted to combat the risk of harm from sexual abuse in correctional settings.

[6] For example, studies confirm that women prisoners are especially vulnerable to and likely to suffer harm from staff sexual abuse because they are disproportionately likely to have previously experienced sexual abuse. *See, e.g.*, National Standards to Prevent, Detect, and Respond to Prison Rape, 77 Fed. Reg. 37106, 37131-32 (June 20, 2012);

86.    Defendant Centurion engages in a policy, practice, and custom of failing to protect Plaintiffs and other incarcerated people at Lowell CI from sexual abuse by its medical provider.

87.    Defendant Centurion has an unlawful unwritten policy, practice, and custom of failing to follow and enforce Florida Department of Corrections' policies to detect, prevent, report, train its staff, and investigate sexual abuse at Lowell CI.

88.    Defendant Centurion's actions deprive Plaintiffs of the minimal civilized measure of life's necessities and human dignity which is inconsistent with evolving standards of decency in a civilized society.

89.    Defendant Centurion has knowledge that there is widespread sexual abuse at Lowell CI, including by its medical provider Defendant Benoit, but has deliberately disregarded the risk of harm from sexual abuse. With deliberate indifference to constitutional rights, Centurion's senior officers and employees failed to remedy this systemic failure to protect Plaintiffs and other incarcerated people from sexual assault.

90.    Defendant Centurion's policy, practice, and custom of deliberate indifference to incarcerated people's right to be free from the risk of sexual assault, and sexual assault, is the direct and proximate cause of the violation of Plaintiffs' rights under the Eighth Amendment to the U.S. Constitution.

91.     Defendant Centurion deliberately disregarded a known or obvious consequence of its actions that Plaintiffs and other incarcerated people at Lowell CI would be sexually assaulted.

92.     Defendant Centurion was aware that Plaintiffs and others faced a substantial risk of serious harm from sexual assault.

93.     Defendant Centurion disregarded that risk with more than gross negligence.

94.     Defendant Centurion disregarded the obvious consequence that its failure to protect Plaintiffs and others from sexual abuse would, and did, result in Defendant Benoit sexually assaulting them.

95.     Defendant Centurion's deliberate indifference directly and proximately caused Plaintiffs and others incarcerated at Lowell CI to be sexually assaulted by Defendant Benoit.

96.     Defendant Centurion's practice or custom of deliberate indifference to incarcerated people's safety from sexual abuse was, and is, the moving force behind the violation of Plaintiffs' rights.

97.     Centurion's policy, practice, or custom constitutes deliberate indifference to Plaintiffs' rights under the Eighth Amendment to the U.S. Constitution.

98.     As a result of Defendant Centurion's deliberate indifference, Plaintiffs are exposed to a substantial risk of serious harm from sexual abuse and severe harm, including sexual abuse, pain, and mental anguish.

99.     Plaintiffs have suffered harm and will continue to suffer harm, for which there is no adequate remedy at law, as a direct and proximate cause of Defendant Centurion's violation of their rights under the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

100.    These harms will continue unless enjoined by this Court.

**COUNT II**
**(Plaintiff Ethel Anderson against Ader Benoit)**
*42 U.S.C. § 1983; Eighth Amendment*

101.    Paragraphs 1 through 47 and 68-82 are incorporated herein as if fully set forth.

102.    At all times material to this action, Defendant Benoit was employed by Centurion, an FDC contractor for medical care at Lowell CI. Defendant Benoit sexually assaulted Plaintiff Anderson while he was acting under color of state law through his employment with Centurion as a medical provider at Lowell CI.

103.    Defendant Benoit subjected Plaintiff Anderson to a substantial risk of serious harm, and severe harm, by sexually assaulting her.

104.   Defendant Benoit's actions deprive Plaintiff Anderson of the minimal civilized measure of life's necessities and human dignity which is inconsistent with evolving standards of decency in a civilized society.

105.   There is no legitimate penological or medical purpose for Defendant Benoit's actions in sexually assaulting Plaintiff Anderson and they amount to the unnecessary and wanton infliction of pain upon her under the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

106.   Defendant Benoit's actions constitute sexual assault of Plaintiff Anderson, an incarcerated person in violation of the Eighth Amendment to the U.S. Constitution. Defendant Benoit, acting under color of state law and without legitimate penological or medical justification, engaged in unlawful sexual acts with Plaintiff Anderson. These unlawful sexual acts include, but are not limited to, intentional sexualized touching underneath Plaintiff Anderson's clothing, including fondling or penetration; digital penetration of her genital opening with a finger or object; and touching her genitalia and breasts. Benoit engaged in these unlawful sexual acts for his own sexual gratification or for the purpose of humiliating, degrading, or demeaning Plaintiff Anderson.

107.   Defendant Benoit has violated Plaintiff Anderson's constitutional right to be free from sexual assault.

108.   It should have been, and should be, obvious to Defendant Benoit that sexually assaulting Plaintiff Anderson caused her mental anguish, physical harm, suffering, pain, degradation, humiliation, and violate her bodily autonomy.

109.   As a result of Defendant Benoit's actions, Plaintiff Anderson has sustained damages.

110.   Defendant Benoit's actions directly and proximately caused the violation of Plaintiff Anderson's Eighth Amendment rights and caused her injuries including physical pain and mental anguish.

111.   Plaintiff Anderson has suffered harm. She will continue to suffer harm, for which there is no adequate remedy at law, as a direct and proximate cause of Defendant Benoit's violation of her rights under the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

112.   These harms will continue unless enjoined by this Court.

## COUNT III
**(Plaintiff Wanda Meadows against Ader Benoit)**
*42 U.S.C. § 1983; Eighth Amendment*

113.   Paragraphs 1 through 34, 48-58, and 68-82 are incorporated herein as if fully set forth.

114.   At all times material to this action, Defendant Benoit was employed by Centurion, an FDC contractor for medical care at Lowell CI. Defendant Benoit

sexually assaulted Plaintiff Meadows while he was acting under color of state law through his employment with Centurion as a medical provider at Lowell CI.

115. Defendant Benoit subjected Plaintiff Meadows to a substantial risk of serious harm, and severe harm, by sexually assaulting her.

116. Defendant Benoit's actions deprive Plaintiff Meadows of the minimal civilized measure of life's necessities and human dignity which is inconsistent with evolving standards of decency in a civilized society.

117. There is no legitimate penological or medical purpose for Defendant Benoit's actions in sexually assaulting Plaintiff Meadows and they amount to the unnecessary and wanton infliction of pain upon her under the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

118. Defendant Benoit's actions constitute sexual assault of Plaintiff Meadows, while an incarcerated person, in violation of the Eighth Amendment to the U.S. Constitution. Defendant Benoit, acting under color of state law and without legitimate penological or medical justification, engaged in unlawful sexual acts with Plaintiff Meadows. These unlawful sexual acts include, but are not limited to, intentional sexualized touching underneath Plaintiff Meadows' clothing, including fondling or penetration; digital penetration of her genital opening with a finger or object; and touching her genitalia and breasts. Defendant Benoit engaged

in these unlawful sexual acts for his own sexual gratification or for the purpose of humiliating, degrading, or demeaning Plaintiff Meadows.

119.   Defendant Benoit has violated Plaintiff Meadow's constitutional right to be free from sexual assault.

120.   It should have been, and should be, obvious to Defendant Benoit that sexually assaulting Plaintiff Meadows caused her mental anguish, physical harm, suffering, pain, degradation, humiliation, and violated her bodily autonomy.

121.   As a result of Defendant Benoit's actions, Plaintiff Meadows has sustained damages.

122.   Defendant Benoit's actions directly and proximately caused the violation of Plaintiff Meadows' Eighth Amendment rights and caused her injuries including physical pain and mental anguish.

123.   Plaintiff Meadows has suffered harm as a direct and proximate cause of Defendant Benoit's violation of her rights under the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

### <u>COUNT IV</u>
**(Plaintiff Jacqueline Luongo against Ader Benoit)**
*42 U.S.C. § 1983; Eighth Amendment*

124.   Paragraphs 1 through 34 and 59-82 are incorporated herein as if fully set forth.

125.   At all times material to this action, Defendant Benoit was employed by Centurion, an FDC contractor for medical care at Lowell CI. Defendant Benoit sexually assaulted Plaintiff Luongo while he was acting under color of state law through his employment with Centurion as a medical provider at Lowell CI.

126.   Defendant Benoit subjected Plaintiff Luongo to a substantial risk of serious harm, and severe harm, by sexually assaulting her.

127.   Defendant Benoit's actions deprive Plaintiff Luongo of the minimal civilized measure of life's necessities and human dignity which is inconsistent with evolving standards of decency in a civilized society.

128.   There is no legitimate penological or medical purpose for Defendant Benoit's actions in sexually assaulting Plaintiff Luongo and they amount to the unnecessary and wanton infliction of pain upon her under the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

129.   Defendant Benoit's actions constitute sexual assault of Plaintiff Luongo, an incarcerated person, in violation of the Eighth Amendment to the U.S. Constitution. Defendant Benoit, acting under color of state law and without legitimate penological or medical justification, engaged in unlawful sexual acts with Plaintiff Luongo. These unlawful sexual acts include, but are not limited to, intentional sexualized touching underneath Plaintiff Luongo's clothing, including fondling or penetration; digital penetration of her genital opening with a finger or

32

object; and touching her genitalia and breasts. Defendant Benoit engaged in these unlawful sexual acts for his own sexual gratification or for the purpose of humiliating, degrading, or demeaning Plaintiff Luongo.

130.   Defendant Benoit's actions violate Plaintiff Luongo's constitutional right to be free from sexual assault.

131.   It should have been, and should be, obvious to Defendant Benoit that sexually assaulting Plaintiff Luongo caused her mental anguish, physical harm, suffering, pain, degradation, humiliation, and violated her bodily autonomy.

132.   As a result of Defendant Benoit's actions, Plaintiff Luongo has sustained damages.

133.   Defendant Benoit's deliberate indifference directly and proximately caused the violation of Plaintiff Luongo's Eighth Amendment rights and caused her injuries including physical pain and mental anguish.

134.   Plaintiff Luongo has suffered harm. She will continue to suffer harm, for which there is no adequate remedy at law, as a direct and proximate cause of Defendant Benoit's violation of her rights under the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

135.   These harms will continue unless enjoined by this Court.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that this Court:

A.     Assume jurisdiction;

B.     Adjudge and declare that the conditions, acts, omission, policies, practices, and customs of Defendants and their agents, officials, and employees violate Plaintiffs' rights under the Eighth and Fourteenth Amendments to the U.S. Constitution;

C.     Permanently enjoin Defendants, their agents, officials, employees, and all persons acting in concert with them under color of state law or otherwise, from continuing the unlawful acts, conditions, and practices described in this Complaint;

D.     Order Defendants, their agents, officials, employees, and all persons acting in concert with them under color of state law or otherwise, to develop and implement, as soon as practical, a plan to eliminate the substantial risk of serious harm and sexual abuse described herein, including but not limited to not allowing Plaintiffs and other patients to see a medical provider other than Defendant Benoit;

E.     Award all damages permitted by law against Defendants, including compensatory, punitive, and nominal damages for the violations of Plaintiffs' rights and the harm they have suffered;

F.     Retain jurisdiction over Defendants until such time as the Court is satisfied that the unlawful policies, practices, acts, and omissions complained of herein no longer exist and will not recur;

G.      Award Plaintiffs, pursuant to 42 U.S.C. § 1988, the costs of this suit

and reasonable attorneys' fees and litigation expenses; and

H.      Grant such other and further relief and this Court deems just and

proper.

<u>**DEMAND FOR A JURY TRIAL**</u>

Plaintiff demands trial by jury on all counts alleged above.

Dated: February 23, 2024                    Respectfully submitted,

By:   /s/ Andrea Costello
      Andrea Costello
      Fla. Bar No. 0532991
      Florida Legal Services
      PO Box 533986
      Orlando, FL 32853
      Telephone: (407) 801-0332 (direct)
      Fax: (407) 505-7327
      andrea@floridalegal.org


By:   /s/ Dante P. Trevisani
      Dante P. Trevisani
      Fla. Bar No. 72912
      Florida Justice Institute, Inc.
      PO Box 370747
      Miami, FL 33137
      Telephone: (305) 358-2081
      dtrevisani@floridajusticeinstitute.org

      **Attorneys for Plaintiffs**

35