# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

———————————————————

ETHEL ANDERSON, *et al.*,

        Plaintiffs,

v.

CENTURION OF FLORIDA, LLC,
*et al.*,

        Defendants.

———————————————————

Case No.: 5:24-cv-00089-WFJ-PRL

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CENTURION OF FLORIDA, LLC'S AMENDED MOTION FOR FINAL SUMMARY JUDGMENT (Doc. 109)

## PRELIMINARY STATEMENT

Starting in 2018, for several years, Plaintiffs and other patients made numerous and repeated cries for help to Centurion of Florida, LLC to stop sexual abuse at Lowell Correctional Institution by its employee, Defendant Dr. Ader Benoit. They told Centurion employees about the sexual abuse and wrote grievances to Centurion and the Florida Department of Corrections' Office of the Inspector General (OIG) that ███████████████████████████████.

███████████████████████████████████████████████

███████████████████████████████ Their pleas for help went unanswered by Centurion. This pattern of sexual abuse went on for years.

Centurion's knowledge of the sexual abuse, and its refusal to take corrective action was the cause of Plaintiffs' injuries when Dr. Benoit sexually assaulted them; it was an obvious consequence of Centurion allowing the sexual abuse to go unabated.

Plaintiffs have established Centurion's knowledge of, and deliberate indifference to, the risk of harm through a widespread pattern of persistent sexual abuse based on several sources. That proof includes ███████████████ ███████████████████████████████████████████████████ ████████, official Prison Rape Elimination Act (PREA) OIG investigations, Plaintiffs' expert opinions, patient complaints and grievances made to Centurion officials, a report █████████████████████████████████████, the ████ ███████████████████████████████████, and ██████████████ ███████████████████████████████████████████.

Centurion's Motion for Final Summary Judgment (Motion) (Doc. 109) should be denied for three reasons. First, there are genuine disputes of material fact. Second, Centurion improperly urges the Court to resolve credibility issues regarding key substantive issues about Plaintiffs' claims. Third, Centurion omits much of Plaintiffs' factual proof establishing their Eighth Amendment violations pursuant to *Monell*; but when properly considered, this evidence establishes their claims. The Court should deny summary judgment because, here, when all

reasonable inferences are made in Plaintiffs' favor, there is ample evidence of the

violations, but there are competing narratives on key events which require

credibility determinations and weighing of evidence by a jury. *See Sconiers v.*

*Lockhart*, 946 F.3d 1256, 1263-67 (11th Cir. 2020).

## **MEMORANDUM OF LAW**

### **I.      Legal Standard for Summary Judgment**

Summary judgment is only appropriate when, viewing the evidence in the

light most favorable to the nonmoving party, there are no genuine issues of

material fact, and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). An issue of

fact is "material" if it might affect the outcome of the case under the governing

law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine"

if the evidence could lead a reasonable jury to find for the non-moving party. *See*

*id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).

When conflicts arise between the parties' facts, the court should credit the

non-moving party's version with any doubts and reasonable inferences drawn in

her favor. *Anderson*, 477 U.S. at 255; *Sconiers*, 846 F.3d at 1263.[1] Summary

judgment is not a time for fact-finding or credibility determinations, those tasks are

reserved for the jury. *Sconiers*, 846 F.3d at 1263 (reversing summary judgment

based on plaintiff's proof of sexual assault).

## II.    Plaintiffs Have Established Centurion's Liability for Violations of Their Eighth Amendment Rights

To impose Section 1983 liability on an entity, a plaintiff must show that: (1)

her constitutional rights were violated; (2) the municipality had a custom or policy

that constituted deliberate indifference to that constitutional right; and (3) the

policy or custom caused the violation. *See Hoefling v. City of Miami*, 811 F.3d

1271, 1279-80 (11th Cir. 2016).

Liability for an unconstitutional policy, practice, or custom can be shown in

a variety of ways including: a policy that is a decision officially adopted by the

entity; a custom which is an unwritten practice that is persistent and widespread;

or, when an official takes an unconstitutional action that is adopted by the entity

(i.e., ratification). *See Hoefling*, 811 F.3d at 1279-80; *see also Brown v. City of Ft.

Lauderdale*, 923 F.2d 1474, 1480-81 (11th Cir. 1991) (citation omitted).

---

[1] Defendant's reliance on *Scott v. Harris* is overreaching and off base. (*See* Doc. 109, 29-30.) As Plaintiffs show, there are genuine disputes of material fact about their claims that cannot be conclusively resolved on summary judgment through uncontroverted video evidence. *See, e.g.*, *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (citing *Scott v. Harris,* 550 U.S. 372 (2007) (where *the video* obviously contradicts plaintiff's version of the facts, we accept the video's depiction instead of plaintiff's account) (emphasis added).

A prison official acts with deliberate indifference if they (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness. *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (*en banc*) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The third prong is satisfied by showing "that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1253.

A prison defendant's subjective knowledge of the seriousness of the risk of harm is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence and the obviousness of the risk. *See id.* at 1263-64 ("especially on summary judgment . . . circumstantial evidence of the obviousness of the risk can create an issue of fact and/or support a decision in the plaintiff's favor") (collecting similar cases). A custom or policy is deliberately indifferent to a constitutional right when a "plainly obvious consequence" of the custom or policy is a violation of a constitutional right. *DeSimone v. Flagler County*, 682 F. Supp. 3d 1085, 1096-97 (M.D. Fla. 2023). To disregard a risk means to "fail[] to take reasonable measures to abate it." *Farmer*, 511 U.S. 825, 847 (1994).

### A.      Plaintiffs establish a constitutional violation

Plaintiffs each prove a constitutional violation based on Defendant Benoit sexually assaulting them during gynecological appointments at Lowell CI. Centurion argues that Plaintiffs cannot show the violation because there is no corroboration of the sexual assault and that Plaintiffs' sworn testimony is not credible. (Doc. 109 at 35.) But these factual or credibility disputes are questions for the jury that cannot be decided on summary judgment. *See Sconiers*, 946 F.3d at 1266. The Court should deny Centurion's motion for these reasons.

"[T]he 'sexual assault' of a prisoner by a prison official in violation of the Eighth Amendment occurs when the prison official, acting under color of law and without legitimate penological justification, engages in a sexual act with the prisoner, and that act was for the official's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." *DeJesus v. Lewis*, 14 F.4th 1182, 1196 (11th Cir. 2021). "At a minimum, those sexual acts include intentional sexualized touching underneath clothing, such as fondling or penetration; coerced sexual activity; combinations of ongoing harassment and abuse; and exchanges of sexual activity for special treatment or to avoid discipline." *Id*. The sexual assault of a prisoner has no legitimate purpose and "is simply not part of the penalty that criminal offenders pay for their offenses against society." *See DeJesus*, 14 F.4th at 1196; *see also Sconiers*, 946 F.3d at 1266.

6

As detailed below, Plaintiffs establish their Eighth Amendment rights were violated through their consistent sworn testimony summarized below that easily satisfies the above standard.

***Ethel Anderson***: ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ (*Id.*)

***Wanda Meadows***: ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████ *(Id.)*

**_Jacqueline Luongo_**: █████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████ (*Id.*)

**_Jennifer Johnson_**: ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████ (*Id.*)

**_Virginia Crowley_**: ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

9



(*Id.*)

**_Expert Opinions of Dr. Noah Nattell_**: The opinions of Plaintiffs' expert, Dr. Noah Nattell (Nattell), further demonstrates the constitutional violation.[2] (Doc. 121-1, pp. 7-12.) Dr. Nattell opines ███████████████████████████ ████████████████████████ (*Id.*) Dr. Nattell also opines ███████████████

(*Id.*)

Contrary to Centurion's argument, there is no requirement that claims be supported by "corroboration." (Doc. 109 at 35.) To the extent this is intended as a proxy for credibility, a jury must consider such arguments. To decide this motion, the Court must view Plaintiffs' testimony about the sexual abuse, their expert's opinions, and any reasonable inferences from it, in their favor. Doing so, and considering the facts, either disputed or which Centurion omits, warrants a denial

---

[2] Dr. Nattell reviewed, *inter alia*, ████████████████████████ ████████████████████████████████████████ ████████████ (Doc. 121-1, Appendix C.) Dr. Nattell has significant expertise and qualifications to opine on these issues. (Doc. 121-1, pp. 1-2.)

of summary judgment. *See Harris v. Singletary*, Case No. 3:22-cv-449-NNH-LLL, 2024 WL 3252797, at *11-13 (July 1, 2024) (denying summary judgment where plaintiff's complaint, FDC OIG report, declaration, and grievance explaining that physical and sexual assault happened disputed by "significantly different accounts" of nurse and correctional officer defendants).

Centurion is also incorrect that the FDC OIG reports and investigations support its argument that no constitutional violation occurred. (Doc. 109 at 35.) This argument fails for three reasons.

First, Plaintiffs do not rely only on the OIG reports and investigations to prove their Eighth Amendment violation. Their sworn testimony in depositions, interrogatory responses, audio recorded statements to the FDC OIG related to their PREA reports, and ███████████████████████████████████████ ████ ████████████████████████████████████████████████████████ all establish the violation. (PSDF, ¶¶ 29, 35, 40, 45, 51.) This is sufficient evidence establishing that they were sexually assaulted.

Second, Centurion misrepresents key facts related to the OIG PREA investigations about Dr. Benoit. For example, over half of the OIG investigations that Centurion states the OIG found to lack merit, were in fact ██████████████ ████████████ (PSDF, ¶ 167.) This includes the PREA reports that ████████ ██████████████████████████████ made. (PSDF, ¶ 167-68.) "Suspended," meant the

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ (*Id.*; *see also* Doc. 109-1 (FDC PREA Procedure), pp. 21-23, PLS005395-96; *id.*, p. 30, PLS00540.) This plainly does not mean the OIG exonerated Dr. Benoit.[3]

In addition, the DOJ found that the investigation process about sexual abuse at Lowell CI was unreliable, defective, and involved a deficient process. (Doc. 133-17 (DOJ Report), pp. 4, 13-33.) OIG investigations were often ended by incorrectly and indefinitely "suspending" them even in cases of serious sexual abuse allegations. (*Id.*, p. 25, PLS005481; pp. 27-28, PLS005483-84.) DOJ's findings included a critique of a deficient investigation against a Centurion psychiatrist accused of repeatedly raping a prisoner in 2019. (*Id.*)

Third, ████████████████████████████████

████████████████████ (Doc. 109 at 35.) ████████████████████. (PSDF, ¶¶ 29, 35, 40, 45, 51.) ████████████████████████████

---

[3] The Office of the Inspector General (OIG) also listed a Prison Rape Elimination Act (PREA) finding on the ████████████████████████████████████ of "unsubstantiated." This means the investigations produced insufficient evidence to make a final determination as to whether or not the abuse occurred; it does not mean it did not occur. *See* § 115.5, 28 C.F.R. Part 115. FDC opens a criminal investigation when there is a criminal predicate. (Doc. 109-1 (FDC PREA Procedure 108.015, Section (10)(d), PLS005404. ████████████████████████████ ████████████████████ (Doc. 115-5.) The OIG can also conduct an administrative investigation about sexual abuse to determine if FDC rules or policies were violated. *See* Doc. 109-1, FDC Procedure 108.015, at 21-23, PLS005395-PLS005396.

███████████████████████████████████████████████

███████████████████████████████████████████████

(*Id.*)

Plaintiffs have proven their Eighth Amendment rights were violated when Dr. Benoit sexually assaulted and abused them. *See Farmer*, 511 U.S. at 834 (being sexually assaulted in prison "is simply not part of the penalty that criminal offenders pay for their offenses against society.") (cleaned up). As the non-movant, Plaintiffs' evidence must be believed with all justifiable inferences drawn in their favor. *Anderson*, 477 U.S. at 255. Any credibility determinations about their accounting of the sexual abuse should be made by a jury, not on summary judgment as Centurion improperly urges.[4] *See Rogers v. Evans*, 792 F.2d 1052, 1059 (11th Cir. 1986) (summary judgment should not be granted in cases where motive, intent, subjective feelings, and reactions are to be searched); *see also Sconiers*, 946 F.3d at 1266 (reversing summary judgment against plaintiff finding if a reasonable jury believed plaintiff's testimony that a correctional officer forcefully shoved his finger into plaintiffs' anus after forcing him to the ground, it would have to conclude that officer sought to sexually abuse him). The Court should deny summary judgment for these reasons.

---

[4] Centurion argues that ████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████ as permitted by Rule 30(e)(1) of the Federal Rules of Civil Procedure. (Doc. 101-1; Doc. 123.) Any inferences about her testimony must be made in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.    Centurion's custom and practice of deliberate indifference to the risk of harm from sexual abuse

Plaintiffs sufficiently establish that Centurion has, for years, had an unconstitutional custom and practice of deliberate indifference to the widespread and persistent risk of serious harm from sexual abuse by Dr. Benoit. This is shown through: (a) ███████████████████████████████████████████████ ███████████████████████████████████████[5] (b) ███████ OIG investigations about Dr. Benoit; (c) numerous patients' formal grievances and complaints ██████████████████████████ ███████████████████f; (d) the DOJ report █████████████████ ████████████████████████████████████████████████████ ███████████████; (e) ██████████████████████████████████ ███████████████████████████; and (f) the expert opinion of Dr. Noah Nattell.

These facts, independently and together, prove Centurion violated the Plaintiffs' Eighth Amendment rights through persistent and widespread practices of deliberate indifference to the risk of serious harm from sexual abuse and

---

[5] Centurion incorrectly states there were ten PREA investigations. There were 11 PREA reports from ████████████████████████████████████████████ ████████████████████████████████. The OIG chose to only investigate 10 of the 11. Adding ██████████████████ ████████████████████████████████████ the total is 13 sexual abuse reports. Plaintiffs file a Declaration from ████████████ who Dr. Benoit also sexually abused. This brings the total for all sexual abuse reports to fourteen (14).

decisions to not correct, prevent, and abate the ongoing harm. *See*, *e.g.*, *See*
*DeSimone*, 82 F. Supp. 3d at 1096-97 (denying summary judgment on *Monell*
claim based on disputed issue of fact about whether the decision not to correct the
blind spots constituted deliberate indifference to plaintiff's constitutional rights
from sexual assault)*; Thomas v. Bryant*, 614 F.3d 1288, 1315-16 (11th Cir. 2010)
(deliberate indifference shown where despite repeated notice from two annual
reports by correctional medical auditor about risk of harm from chemical agents on
mentally ill prisoners, Department of Corrections refused to change non-
spontaneous use of force policy); *G.H. v. Marstiller*, 424 F. Supp. 3d 1109, 1117-
19 (N.D. Fla. 2019) (deliberate indifference demonstrated through, *inter alia*,
through agency refusal to change policy and practice after notice from DOJ report
finding similar unconstitutional conditions of confinement at juvenile prisons,
youth grievances about risk of harm, and official reports about harm from similar
conditions). Plaintiffs have put forward sufficient evidence to "permit 'the
reasonable inference that [Centurion] is liable for the misconduct alleged.'"
*Hoefling*, 811 F.3d at 1281 (cleaned up).

To the extent Centurion disputes these facts, the Court cannot resolve those
disputes at this juncture. Whether Centurion took these actions out of deliberate
indifference to the risk of harm from sexual abuse by Dr. Benoit is a genuine issue

of material fact to be considered by a jury. *See DeSimone*, 682 F. Supp. 3d at 1096-97.

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ ██████████ (Doc. 109-7 (PSDF, ¶¶ 24, 53, 84, 85, 94, 107, 108-110, 115, 122, 127, 130, 133, 157, 165, 171, 172, 173; Doc. 134-19 (DOJ related); Ex. 1 (Centurion emails).) ████

██████████████████████████████████████████████████

████████████████████████████████ (PSDF, ¶ 166.) These reports constitute a widespread and longstanding practice or custom which Centurion allowed to continue. *See*, *e.g.*, *Herr v. Armor Correctional Health Services*, 494 F. Supp. 3d 1197, 1203-04 (M.D. Fla. 2020) (denying summary judgment based on custom of 16 jail deaths over a nine year span before and after pre-trial detainee died relying on expert opinions about insufficient medical care and policy violations). The Court may rely on these reports, included in the OIG investigations, as proof of Plaintiffs' claims. *See*, *e.g.*, *Harris*, 2024 WL 3252797, at *11; *Hanson v. Fla. Dep't of Corrections*, Case No. 5:25-cv-21-KKM-PRL, 2025 WL 2531484, at *6 (M.D. Fla. Sept. 3, 2025).

16



(*Id.*, ¶ 8.)

17

████████████████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ *(Id.)*

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ *(Id.)*

18

(*Id.*)

(*Id.*)



(Id.)

(Id.)

---

[6] During a colposcopy like this, a provider uses an iodine solution on the cervix to visualize any lesions. This does not involve stroking the vagina or buttocks. *See* https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/cervical-biopsy



(*Id.*)

Centurion knew about 13 of these sexual abuse reports at the time or shortly after they were made. This is based on, *inter alia*, the OIG sending Centurion corporate leadership the closed PREA investigations; ████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████; email correspondence ████████████████

████████████████████████████████████████████████████████

█████████████████████████████████; its █████████████████████████████

████████████████████████; and this lawsuit. (Doc. 134-19 (DOJ investigation); Ex. 1 (Centurion emails); PSDF, ¶¶ 84, 107-110, 115, 122, 130, 165; Doc. 134-19 (DOJ related).)

Despite this knowledge, Centurion took no action for five years, until, months after this lawsuit was filed, it suspended Dr. Benoit with pay. (Doc. 109-7 (R. 30(b)(6) Dep.), 194:4-8, 196:4-14.) This was unreasonable corrective action and is deliberate indifference to the risk of harm. *See Depew v. City of St. Mary's,*

21

*Georgia*, 787 F.2d 1496, 1499, 1501 (11th Cir. 1986) (unlawful custom shown through City's knowledge of prior complaints, its failure to take remedial action, and lack of inclination to remedy pattern of known constitutional violations); *see also Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1311-12 (11th Cir. 2001) (upholding district court's decision that City had a policy or custom of ignoring or tolerating gross sexual harassment where it failed to investigate allegations and took no remedial action).

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████ It never did and has no explanation about why. (Doc. 109-7 (R. 30(b)(6) Dep.), 131:3-5, 133:3-6)

That patients were exposed to a risk of Dr. Benoit sexually abusing them was obvious after the second, fifth, or even tenth PREA report. *See DeSimone*, 682 F. Supp. 3d at 1096 (denying summary judgment based on disputed fact about whether or not decision not to correct blind spots in jail to prevent sexual assault constituted deliberate indifference). This is so even if the ███████████████ ████████████████████████████ as a jury could find that it was unreasonable to ignore a pattern of consistent accusations. *See also Love v. Lee Memorial Health System*, Case No: 2:20-cv-379-JES-MRM, 2022 WL 19653, at

22

*5-6 (M.D. Fla. Jan. 3, 2022) (finding even one instance of sexual abuse sufficient to put entity on notice of violation even where internal investigator found report lacked merit). These facts establish a pattern of deliberate indifference to the risk of harm.

### *Formal Grievances and Complaints*

Centurion's knowledge of the pattern of persistent and widespread sexual abuse by Dr. Benoit is also demonstrated through patient complaints and formal written grievances to its management and policy-level employees about the sexual abuse. *See*, *e.g.*, *Anderson v. City of Atlanta*, 778 F.2d 678, 685-86 (11th Cir. 1985) (custom or policy established relying on testimony of several officers who also made complaints about understaffing); *Franklin v. Tatum*, 27 Fed. App'x 761, 765-66 (11th Cir. 2015) (dispute of fact about deliberate indifference to risk of harm shown through one prior report of sexual abuse to jail administrator).

███████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

　　██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████ *(Id.)*

Similarly, ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████ *(Id.)*

Even after ██████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████ (PSDF, ¶¶ 29, 35, 40; Doc. 134-6

24

(Crowley), p. 39, PLS006404; Doc. 134-14 (Anderson), p. 88, FDC 6853; Doc. 134-15 (Luongo), p. 14-15, FDC 7521, FDC 7543.)

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ (*Id.*)

Centurion disputes that these reports were made to their employees and that there were instances where they failed to follow FDC policy and Centurion training, but these competing facts cannot be weighed on summary judgment. *See Harris*, 2024 WL 3252797, at *11-12.

### ***DOJ Report*** ████████████████████

A 2022 DOJ report and ████████████████████ also put Centurion on notice of widespread and long-standing sexual abuse at Lowell CI. (Doc. 134-19.) Centurion officials received the 2022 DOJ report and read it. (PSDF, ¶ 170.)

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ (Doc. 134-19.) ████████████████

██████████████████████████████████████████████████

█████████████████████████████ (*Id.*)

The DOJ's report, ████████████████████████████████████

███████ put Centurion on notice of a pattern of a risk of serious harm from sexual

abuse. DOJ found Lowell CI:

> (1) fails to protect women prisoners from sexual abuse by staff in violation of the Eighth Amendment; and (2) exposes women prisoners to substantial risk of serious harm from sexual abuse in violation of the Eighth Amendment. Systemic failures in Lowell's policies and practices discourage reporting of sexual abuse; lead to an inadequate response to, and investigation of, allegations of sexual abuse; and result in grossly inadequate supervision that provides opportunities for further sexual abuse.

(Doc. 133-17 (DOJ Report), pp. 4, 13-33.) These inadequacies also include:

exposing women prisoners to a substantial risk of serious harm by deterring them

from reporting staff sexual abuse due to the threat of retaliation; failing to respond

with appropriate investigations when women do report abuse; and failing to

provide effective and confidential reporting mechanisms. (*Id.*) Given these

findings, it was unreasonable for Centurion to only rely on the OIG to investigate

sexual abuse. This is a fact issue for the jury. *See*, *e.g.*, *Hanson*, 2025 WL

2531484, at *7.

This is clear evidence of Centurion's knowledge and deliberate indifference

to an identified risk of harm. *See Hope v. Pelzer*, 240 F.3d 975, 978-79 (11th Cir.

2001), overruled in part on other grounds, 536 U.S. 730 (2002) (corrections agency

ignoring DOJ report about constitutional infirmity of using hitching post for discipline supports inference of awareness and disregard of risk of harm).

████████████████████

Centurion's knowledge of and disregard for the risk of harm is shown through ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ Instead, Centurion left Plaintiffs and other patients at risk for sexual abuse or further harm.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ t. (*Id.*)

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



██████████ (Ex. 8 (█████ Decl.); Ex. 11 (patient refusals); Doc. 115-13

████████████████ PSDF, ¶¶ 122, 127, 130, 133.)

The ████████████████████████████████████

████████████████████████ was a clear and obvious warning sign for Centurion

that there was, at the very least, a risk of sexual abuse that warranted further

investigation. Centurion is required by FDC policies, its contract with FDC, and

federal PREA requirements to monitor its clinicians to detect signs or indicators of

sexual abuse and to take reasonable action to investigate and address any sexual

abuse. (Doc. 109-1 (FDC PREA Procedure), Sec. IV., PLS005410; Doc. 109-2

(Centurion Contract), p. 13, CENT 001989.) Centurion asserts that it follows these

requirements. (Doc. 109 at 36.) It did not.

### *Expert Opinion of Dr. Noah Nattell*

Dr. Nattell's opinions also address ████████████████████



███████████████████████████████████████. This

expert evidence further supports a custom/pattern violation. *See, e.g., Herr*, 494 F.

Supp. 3d at 1204-04; *DeSimone*, 682 F. Supp. 3d at 1098.

As Dr. Nattell noted, ████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████████████████

(Doc. 121-1, p. 6.) ███████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████ (*Id.*)

Dr. Nattell also opines ████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████ (*Id.*)

███████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████ (*Id.*, p. 12.)

Finally, in his opinion, ████████████████████████████

████████████████████████████████████████████████

█████████████████████████ (*Id.*, p. 7.) ████████████████

████████████████████████████████████ (*Id.*, p. 28.) █

█████████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████ (*Id.*, p. 28.)

**C.** **Centurion's policymakers were deliberately indifferent to the risk of harm and ratified it**

Plaintiffs also establish that Centurion has an unconstitutional policy of deliberate indifference to the risk of harm from sexual abuse through the acts of policymaking officials including its corporate Vice President of Operations, Risk Manager, Statewide Medical Director, and Lowell CI Medical Director. These officials knew that Centurion's policies regarding sexual abuse were implemented in ways that exposed patients to a risk of harm, but they tolerated, ratified, and failed to take reasonable remedial measures to correct it after learning about it. They are high-ranking officials "who edicts and acts may fairly be said to represent official policy" and their actions establish Centurion's liability under Section 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 659 (1978).

Centurion's decisions to deliberately disregard the sexual abuse began in December 2018. (Doc. 109-7 (R. 30(b)(6) Dep.), 103:3-10,131:3-10; Ex. 1 (Centurion emails).) ███████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████████████ (Ex. 1 (Centurion emails).) ███████████████

███████████████████████████████████

██████████████████████████████ (*Id.*)

Other high-level Centurion officials were also aware of the sexual abuse by Dr. Benoit but disregarded, or ratified, the known risk of harm. These include ███

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███ (Doc. 134-18.) ████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ (Doc. 134-18.)

Centurion is liable under Section 1983 for these decisions by its corporate, state-level, and facility-level policy makers whose deliberate indifference to the risk of harm from the sexual abuse by Defendant Benoit allowed it to continue. Their decisions, and ratification of subordinate decisions, were not subject to further review and establish Centurion's liability. *See Mandel v. Doe*, 888 F.2d 783, 794 (11th Cir. 1989); *see also Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (reversing district court and holding that plaintiff sufficiently alleged a policy or custom where "his experiences were the result of discriminatory practices accepted by the police department" and the city police chief's knowledge of, and acquiescence in, those practices).

31

**D.    Centurion's arguments about *Monell* liability raise disputes of material fact and lack merit**

Centurion asserts four main arguments regarding its *Monell* liability: (1) the "undisputed factual record confirms [it] had a policy and practice of requiring a female chaperone" during all gynecological visits; (2) it had a policy to follow FDC's PREA procedure and provided PREA training to its staff; (3) all reports of sexual misconduct automatically triggered a formal OIG PREA investigation; and (4) the ten PREA reports against Dr. Benoit were thoroughly investigated and lacked merit. (Doc. 109 at 36-37.) Each involves disputes of fact that require summary judgment to be denied.

First, there are several factual disputes regarding Centurion's "chaperone" argument. Centurion fails to provide record cites for this "policy," any written requirement, or any training about it, because it does not exist. (Doc. 109 at 36.) Centurion provided no written or formal training about how to chaperone a gynecological exam. (PSDF, ¶¶ 28, 59, 62, 78; Doc. 109-3, 82:10-17; Doc. 109-4, 61:11-18; Doc. 109-7, 16:1-22, 77:5-78:2; Doc. 109-4, 61:11-18; Doc. 100-7, 61:11-18.) Assistants that worked with Dr. Benoit lacked medical knowledge or training to understand if something that he did during an appointment was not required. (PSDF, ¶¶ 28, 31-33, 36, 59, 62, 78, 99.) One assistant was a record clerk, and had no medical training whatsoever. (PSDF, ¶ 28.)

32

In addition, assistants in the exam room ███████████████████

███████████████████████████████████████████. (Doc. 115-8,

74:19-75:11; Ex. 8 (Fisher Decl), ¶ 3.) Several assistants who signed a patient's

exam form ████████████████████████████████████████

████████████████████████████████████████

██████ (PSDF, ¶ 44.) Plaintiffs' expert also testified ████████████████

████████████████████████████████████████

████████████████████████████████. (Doc. 121-1, p. 7.)

The presence of assistants does not negate Plaintiffs' claims and cannot support

summary judgment for Centurion. *See, e.g.*, *Harris*, 2024 WL 3252797, at *11-12.

Second, even if Centurion staff were trained about FDC PREA procedures,

there are instances where they were not followed, including Centurion employees'

decisions <u>not</u> to detect, report, and correct sexual abuse. *See* Sec. II.B., *supra*.

Third, not all patient reports about Dr. Benoit's sexual misconduct made to

Centurion staff "automatically triggered a formal OIG PREA investigation." *See*

*id*. Centurion employees did not make a PREA report when Plaintiffs told them

about the sexual abuse. (*Id.*) Centurion, contrary to policy, ████████████████

████████████████████████████████████████

██████████████████████████(Ex. 1 (Centurion emails); Doc. 115-15

(Centurion emails 2018).) Although FDC policy (and PREA regulations) require

33

separation of an abuser and reporter after a PREA report is made, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*See* Sec. II.B., *supra*. These are  violations of FDC and PREA policy. (Doc. 109-1 (FDC PREA Procedure), Sec. 602.053(4)(a)2., p. 11, PLS005385; *see also* § 115.67, 28 C.F.R. Part 115.) Centurion is liable for its deliberate disregard of Plaintiffs' Eighth Amendment rights, even where those rights are also articulated in FDC policy and procedure that it claims to follow, but does not. *See Albritton v. Centurion of Florida*, Case No. 3:21-cv-712-MMH-JBT, 2023 WL 34703, at *6 (M.D. Fla. Jan. 4, 2023) (rejecting similar argument).

Fourth, none of the 11 PREA reports by ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

were "thoroughly investigated" or "lacked merit." (Doc. 109 at 41-42.) As explained above, the OIG did not find all complaints were unsubstantiated; they were suspended or concluded there was insufficient evidence for criminal prosecution. *See* Sec. II.A., *supra*. Even if all exonerated Benoit, it is still for a jury to decide whether ignoring numerous consistent accusations (regardless of whether they were substantiated) was a reasonable response given the risk of harm and actual harm. *See Hanson*, 2025 WL 2531484, at *7 (collecting cases) (determinations about reasonableness of investigative or corrective action about

34

sexual misconduct allegations must go to a jury); *see also Love v. Lee Mem'l Health Sys.*, No. 2:20-CV-379-JES-MRM, 2022 WL 19653, at *5–6 (M.D. Fla. Jan. 3, 2022) (same).

Finally, Centurion argues that the number and timing of the sexual assault allegations is insufficient to prove a widespread pattern. (Doc. 109 at 37-41.) This argument is wrong for several reasons.

As explained above, Plaintiffs do not solely rely on the PREA reports as evidence of the unconstitutional policy, practice, and custom. *See* Sec. II.B. & C., *supra*. Other evidence establishes the pattern and Centurion's knowledge of it. (*Id.*). *See Anderson v. City of Atlanta*, 778 F.2d at 687 (city held liable for pattern of understaffing causing death based on complaints and testimony of several officers).

More fundamentally, the number and timing of the sexual assault reports against Benoit ███████████ is easily sufficient for a jury to conclude there was a widespread pattern, and numerous cases support that conclusion. *See Am. Fed'n of Lab. & Cong. of Indus. Organizations v. City of Miami*, 637 F.3d 1178, 1189 (11th Cir. 2011) ("A plaintiff may demonstrate notice by showing a 'widespread pattern of prior abuse' or *even a single earlier constitutional violation*.") (emphasis added); *see also DeSimone,* 682 F. Supp. 3d at 1096 (M.D. Fla. 2023) (denying sheriff's motion for summary judgment on municipal liability despite the fact that

35

"no incidents had happened there before, no incidents had been reported against [the assailant), and there were policies in place to prevent corrections officers from sexually assaulting inmates."); *Love*, 2022 WL 19653, at *5-6 (denying summary judgment and finding that *one* prior sexual assault complaint—determined to be not credible after an investigation—sufficient for jury to find policy or custom); *Herr*, 494 F. Supp. 3d at 1203 (16 incidents of inadequate medical care over 9 years where plaintiff's fell "in the middle" sufficient for *Monell* liability).

Centurion's argument regarding the timing of the incidents—alleging that only two happened before the assaults at issue here—has also been rejected. "[Post-incident evidence] can demonstrate a relevant pattern of behavior, and can show the existence of a policy or custom." *Kaether v. Armor Corr. Health Servs., Inc.*, No. 16-62950-CIV, 2018 WL 1981133, at *6 (S.D. Fla. Apr. 26, 2018), *report and recommendation adopted*, No. 16-62950-CIV, 2018 WL 10788509 (S.D. Fla. May 21, 2018); *Herr*, 494 F. Supp. 3d at 1203 (incidents of inadequate medical care occurring after plaintiff's can be considered for *Monell* liability)

The cases that Centurion relies on for these arguments are inapposite. It first mispresents that *Doe v. Miami-Dade County* is an Eleventh Circuit case (Doc. 109 at 37.); it is not. 97 F. Supp. 2d 1296 (S.D. Fla. 2011). The plaintiffs' claims in that case, and others Centurion relies on, were about different individuals, trying to support a failure to train theory. In contrast, here, the complaints were about the

36

same person, putting Centurion on notice that it had to take action *about him*. *See
also Windham v. City of Fairhope, Ala.*, 20 F. Supp. 3d 1323, 1329 (S.D. Ala.
2014) (complaints about different officers); *Whitaker v. Miami-Dade Cnty.*, 126 F.
Supp. 3d 1313, 1321 (S.D. Fla. 2015) (same); *Brooks v. Scheib,* 813 F.2d 1191,
1193 (11th Cir. 1987) (finding same and "no evidence that city officials were
aware of past . . . misconduct.").

### E.      Plaintiffs Have Established Causation Under Section 1983

Centurion's argument on causation simply repeats its arguments on liability;
namely, that "unsubstantiated" allegations—with their number and timing—
cannot serve as notice to Centurion. As Plaintiffs have explained above, there is no
such requirement for complaints to be substantiated, very few incidents are
sufficient for notice, post-incident evidence can establish a pattern, and,
notwithstanding all of this, there is ample other evidence beyond the PREA reports
to prove Centurion's knowledge.

Centurion also argues that no action by it would have prevented the sexual
abuse because the OIG found none occurred. (Doc. 109 at 42.) Again, this is not
what the OIG found and sufficient disputed facts establish the violations. *See* Sec.
II.A., *supra*. Centurion continued to receive PREA reports, informal complaints,
formal written grievances, and refusals to see Dr. Benoit for gynecology.
Centurion could have taken action such as allowing Plaintiffs to see another

provider or removing Dr. Benoit from patient care while it did its own HR investigation. ████████████████████████████████████████████

████████████████████████████████████, but did not. If it had done so after the second or even third PREA report, Dr. Benoit would not have sexually assaulted Plaintiffs and other patients. And even if the closed PREA reports were the only evidence, it is still for a jury to decide whether Centurion's inaction in the face of numerous consistent accusations—even if unfounded—was deliberately indifferent.

"The presence of the requisite causation in a case brought under 42 U.S.C. § 1983 is . . . a question of fact or the jury." *DeSimone*, 682 F. Supp. 3d at 1097-98; *Love*, 2022 WL 19653, at *6. There is ample record evidence for a jury to make that decision here.

### III.    Plaintiff Anderson's Claim Is Not Barred By The Statute of Limitations

Plaintiff Anderson's claim is not barred by the statute of limitations. Centurion's argument demonstrates its misunderstanding of Plaintiff Anderson's Eighth Amendment claims. (Doc. 109 at 30-31.)

Ms. Anderson had two gynecology appointments with Dr. Benoit; one on February 1, 2019, and one March 13, 2020. He sexually assaulted her during both. (PSDF ¶ 29.) During the visits, ███████████████████████████

████████████████████████████████████████████

38



(*Id.*) During one of the appointments, ██████████████████████

██████████████████████████████████████ (*Id.*)

None of these actions were done for legitimate medical reasons. (*Id.*) ██████████

██████████████████████████████ but he did sexually

assault Ms. Anderson each time. *See Sconiers*, 946 F.3d at 1266; *DeJesus*, 14 F.4th

at 1196. ██████████████████████████████

██████████████████████. (PSDF, ¶ 29.)

Although Ms. Anderson ██████████████████████

██████████████████████████████████████

██████████████████████ (Doc. 115-1 (Anderson Dep.), 72:13-

73:7.). ██████████████████████████████████████

██████████████████ (*Id.*) Any disputes of fact about what aspects of

the sexual assaults in 2019 and 2020 occurred during which appointments cannot

be resolved on summary judgment.

Centurion compounded the harm it caused to Ms. Anderson from these

appointments. After the 2020 appointment, ██████████████████████

██████████████████ but refused to see Dr. Benoit again about it. (Doc.

134-14 (Anderson records), pp. 13-88.) She put in sick calls and filed grievances

██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ (*Id.*) ████████████████████

████████████████████████ (*Id.*)

As to Ms. Anderson's *Monell* claim against Centurion, the 2019 sexual assault is part of the pattern of a series of incidents establishing persistent and widespread sexual abuse that Centurion knew of, for several years, but allowed to continue. *See Rogers*, 792 F.2d at 1058-59; *Herr*, 494 F. Supp. 3d at 1203-04. The 2019 sexual assault is evidence of the pattern of sexual abuse demonstrating an ongoing risk of harm which Centurion was deliberately indifferent to. *Id.* The fact that Dr. Benoit sexually assaulted Ms. Anderson again in 2020, and Centurion allowed the risk of harm to continue even after ████████████████████████

██████████████████████████████████████████████████████████

████████████, is further evidence of how the risk of harm continued unabated and that the risk of harm was obvious. *See Farmer*, 511 U.S. at 845-46; *see also DeSimone*, 682 F. Supp. 3d at 1096. This is true even if Ms. Anderson could not seek relief for an Eighth Amendment violation based on the 2019 sexual assault.

The continuing violation doctrine also permits Ms. Anderson to sue on an otherwise arguably time-barred claim for the 2019 assault because additional violations of the law occurred within the statutory period. *See Robinson v. U.S.*, 327 F. App'x. 816, 818-19 (11th Cir. 2007) (continuing to expose plaintiff to the

40

source of the harm after it was identified was a continuing violation of his rights). This was not a singular act that caused no future injury. Rather, the 2019 sexual assault was part of an ongoing violation which ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ (PSDF, ¶¶ 29, 34; Doc. 134-14 (Anderson records). ) When, as here, the violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases. *Robinson*, 327 F. App'x. at 818-19. Centurion's unlawful conduct has not ceased.

Even if the Court finds that Ms. Anderson cannot seek injunctive or declaratory relief, or damages for the 2019 sexual assault, she still establishes an individual Eighth Amendment violation caused by the 2020 sexual assault and the 2019 sexual assault was an ongoing violation and part of the ongoing persistent pattern of sexual abuse.

## IV.    Plaintiffs' Punitive Damages Claims Must Go to the Jury

Centurion incorrectly asserts that Plaintiffs present no evidence to support punitive damages. (Doc. 109 at 43.) This argument is meritless.

By establishing Defendant Benoit sexually assaulted them, and Centurion's deliberate indifference to the risk of harm, and actual harm, from that sexual

41

assault, they have established the acts were willful, motived by an evil intent or motive to harm, and involved reckless indifference to their Eighth Amendment rights. *See Sconiers*, 946 F.3d at 1266 (sexual assault is a willful and reckless malicious and sadistic action that always violates the Eighth Amendment); *see also Harris v. Singletary*, Case No. 3:22-cv-449-MMH-LLL, 2024 WL 3252979, at *13-14  (M.D. Fla. July 1, 2024) (summary judgment denied for punitive damages claim where plaintiff demonstrated officers willfully used excessive force and sexually assaulted him despite officers disputing plaintiff's account of events). Any disputes of material fact about the sexual assaults (and whether Plaintiffs are entitled to punitive damages) must go to a jury, as must the consideration of a punitive damages award. *See Smith v. Wade,* 461 U.S. 30, 56 (1983).

## V.    Plaintiffs' Claims for Declaratory and Injunctive Relief Are Not Moot

Plaintiffs' claim against Centurion under *Monell* for deliberate indifference to their Eighth Amendment rights not to be sexually assaulted or exposed to a risk of sexual assault violation are not moot. (Doc. 109 at 44.) This is true for several reasons.

Because Centurion has failed to take sufficient corrective action to prevent the risk of harm from sexual abuse, Plaintiffs' *Monell* claim remains a live controversy for which the Court can grant meaningful relief; they have a legally cognizable interest in the outcome of this litigation. Centurion's unconstitutional

policy, practice, and custom of deliberate indifference to the risk of harm from sexual abuse by its provider remains in place.

Plaintiffs seek injunctive relief against Centurion, and its agents, officials, and employees, from continuing the same policy, practice, and custom which caused the risk of sexual abuse to occur. This includes a Court Order that Centurion develop and implement, as soon as practical, a plan to eliminate the substantial risk of serious harm and sexual abuse, *including but not limited to* not allowing Plaintiffs and other patients to see a medical provider other than Defendant Benoit. (Doc. 5 at 43-44.) (emphasis added). *See Thomas*, 614 F.3d at 1320 (affirming injunctive relief to prevent a substantial risk of serious injury from ripening into future harm from Department of Corrections' chemical agents policy).

Such a plan could involve, for example: Centurion conducting its own investigation about sexual abuse and other unlawful conduct by Defendant Benoit that harmed patients at Lowell CI; a requirement that Centurion put any PREA reports in a provider's personnel file; additional training to correct the failure of Centurion employees to report sexual abuse, as happened here; and Centurion developing its own corporate policy and procedure to compliance with PREA requirements so that patients are separated from any medical clinician that is the subject of a PREA report or investigation. *See*, *e.g.*, *LaMarca v. Turner*, 995 F.2d

43

1526, 1542, 1544 (11th Cir. 1993) (affirming injunction where prison official had not taken sufficient steps to ensure that prison past wrongs allowing prisoner rape would not be repeated). Although Dr. Benoit resigned, there is nothing stopping Centurion from hiring him to work with female patients in an FDC facility again.

Contrary to Centurion's assertion, as a state actor performing a government function such as providing correctional health care in a state-operated institution, it has a legal obligation to have policies and practices which do not violate the Constitution. *Ancata v. Prison Health Services*, 769 F.2d 700, 703 (11th Cir. 1985). Centurion can, and should have, taken corrective action to prevent, detect, and eliminate sexual abuse by its provider. It did not.

Centurion's citations are inapplicable. (Doc. 109 at 44.) Centurion has not changed any policy or procedure to protect patients at Lowell CI from the risk of harm from sexual abuse by its providers or corrected the harm that Plaintiffs and other patients have suffered, and continue to, by not being able to obtain necessary medical care that Centurion is required to provide in an environment safe from sexual assault. *See Farmer*, 511 U.S. at 832, 852, 857 (1970) (prison officials must fulfill their affirmative constitutional duty to prevent inmate assault, including prison rape, or otherwise face a serious risk of being required by a court to rectify the hazardous conditions).

44

## CONCLUSION

Based on the foregoing reasons, Plaintiffs respectfully request that the Court

deny Defendant Centurion's Motion for Final Summary Judgment. (Doc. 109.)

Dated: October 22, 2025                    Respectfully submitted,

By:    /s/ Andrea Costello
        Andrea Costello
        Fla. Bar No. 0532991
        Samantha Shaw
        Fla. Bar No. 109768
        Florida Legal Services
        P.O. Box 533986
        Orlando, FL 32853
        Telephone: (407) 801-0332 (direct)
        Fax: (407) 505-7327
        andrea@floridalegal.org
        samantha.shaw@floridalegal.org

        Dante P. Trevisani
        Fla. Bar No. 72912
        Erica S. Downs
        Florida Bar No. 120581
        Florida Justice Institute, Inc.
        40 N.W. 3rd Street, Suite 200
        Miami, FL 33128
        Telephone: (305) 358-2081
        dtrevisani@floridajusticeinstitute.org
        edowns@fji.law

        **Attorneys for Plaintiffs**

45