UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

_____

ANDERSON, *et al.*,

      Plaintiffs,

v.                                Case No.: 5:24-cv-00089-WFJ-PRL

CENTURION OF FLORIDA, *et al.*,

      Defendants.

_____

**PLAINTIFFS' STATEMENT OF DISPUTED FACTS
IN OPPOSITION TO DEFENDANT CENTURION OF FLORIDA, LLC'S
MOTION FOR FINAL SUMMARY JUDGMENT (Doc. 109)**

      Plaintiffs respectfully submit the following Statement of Disputed Facts in response to Defendant Centurion of Florida, LLC's (Centurion) Motion for Final Summary Judgment. (Doc. 109, ¶¶ 12-164.) Plaintiffs note that paragraphs 1-11 of Centurion's Motion are "Background," not part of Centurion's Statement of Undisputed Material Facts which start at paragraph 12. (*Id.*)

      12.    Admitted, but irrelevant.

      13.    Admitted, but irrelevant.

      14.    Admitted, but irrelevant.

      15.    Admitted, but irrelevant.

      16.    Admitted, but irrelevant.

17.     Disputed as to the characterization of Dr. Benoit's "care and treatment" of patients at Lowell Correctional Institution (CI). Benoit was

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████ (Doc. 115-5.) Benoit engaged in physician misconduct that had no legitimate medical purpose, under the guise of medical examinations, including

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ (*Id.*; *see also* Doc 121-1 (Nattell Report), p. 7.) Benoit started working at Lowell CI in June 2016, not 2018. (Doc. 100-11 (Benoit Dep.), 62:3-6.)

18.     Admitted.

19.     Admitted.

20.     Disputed that FDC followed a "zero-tolerance policy" based on a report by the U.S. Department of Justice (DOJ) and based on sexual abuse that was allowed to occur at Lowell CI. (Doc. 133-17 (DOJ Report); Doc. 115-5 (Prison Rape Elimination Act) (PREA records); Doc. 115-4 (Third Party Grievances).)

21.     Disputed that these sexual assault reporting options are provided to incarcerated people at Lowell CI. The DOJ found systemic reporting issues. (Doc. 133-17 (DOJ Report), pp.18-30) (Lowell CI procedures and practices discourage

2

prisoners from making sexual abuse reports, prisoners who make reports are routinely placed in segregated housing as punishment or deterrent from reporting and deprived of privileges, prison has inadequate and deficient system to investigate sexual abuse reports, and prisoners cannot access hotline to report sexual abuse). Plaintiffs also testified that ███████████████████████ ███████████████████████████████████████████ ████████████████████████. (Doc. 115-1 (Anderson Dep.), 29:10-20, 100:8-14, 101:8-9, 101:23-102:5; Doc. 115-8 (Crowley Dep.), 105:4-10, 108:1-109:1; Doc. 115-10 (Johnson Dep.), 69:22-70:5; 84:2-6; Doc. 115-11 (Meadows Dep.), 112:19-113:4; Doc. 115-6 (Luongo Dep.), 69:7-24.) *See* disputed facts in ¶¶ 20, *supra*.

22.    Disputed that OIG conducts "all" investigations based on DOJ's findings to the contrary. *See* disputed facts in ¶¶ 20-21, *supra*.

23.    Disputed that FDC uses the referenced authority to take those actions. *See* disputed facts in ¶¶ 20-21, *supra*.

24.    Disputed. Centurion's contract with FDC requires it to inform FDC if it receives notice of any investigations. (Doc. 109-2 (Centurion contract), p. 52, CENT 002028.) Centurion admitted that its providers should tell the company if they are the subject of an OIG PREA investigation. (Doc. 109-7 (R. 30(b)(6) Dep.), 88:11-25) ("if somebody's involved in an investigation, we should know

3

about it."); *id.*, 89:9-12) ("Q. Centurion believes that the employee should disclose to the company if it's the subject of a PREA report? A. Yes.").

25.   Admitted.

26.   Admitted.

27.   Admitted.

28.   Disputed. Centurion fails to provide any record cite for this; it does not exist. Centurion has no written policy or practice, no requirement, and provides no formal training about "female chaperones" for all gynecological examinations. (Doc. 109-4 (T. Matamoros Dep.), 61:11-18) ("Q. Have you received any formal training on being a chaperon[e] during gynecological exams with Centurion? A. No. Q. Have you been given [] a checklist on things you should do as a chaperon[e] during gynecological exams with Centurion? A. A checklist, no."); Doc. 109-3, Chanel Hopkins Dep., 82:10-17.) A Centurion administrative assistant and record clerk with no medical training whatsoever testified that she had chaperoned medical appointments. (Doc. 109-5, 16:14-17:8 77:5-78:2.) Disputed through expert testimony. (Doc. 121-1 (Nattell Report), at p. 7; Doc. 121-2 (Nattell Dep.), 122:21-124:5.)

29.   Plaintiffs dispute the characterization of Anderson's report of sexual abuse which takes it out of context and is incomplete. Defendant Benoit touched Ms. Anderson in sexualized ways without medical justification and made

sexualized comments during gynecological appointments in 2019 and 2020. (Doc. 134-4 (Anderson Resp. to Benoit's Interrogatories), Nos. 3, 5, 11; *id.* (Anderson Resp. to Centurion's Interrogatories, Nos. 4, 5.) During both appointments, ███

█████████████████████████████████████████

██████████████ (*Id.*) ██████████████████

██████████████████████████ (*Id.*) ████████

████████████████████████████████ (*Id.*) At the

2019 appointment, █████████████████████████████

████████████████████████████████████

███████████████ (*Id.*) ████████████████████

██████████████████████ (*Id.*) ████████████████

██████ (*Id.*) ██████████████████████████████

██████████████████ (*Id.*) ███████████████████

█████████████████████████████████████████

████ (*Id.*) None of these actions were done for legitimate medical reasons. (Doc. 115-1, 62:23-63:7; 63:21-24; 64:13-17; 72:18-73:7; 76:22-77:21.) After the

appointments, ██████████████████████████████

█████████████████████ (Doc. 134-4 (Anderson Resp. to Benoit's

Interrogatories), Nos. 3, 5, 11; *id.* (Anderson Resp. to Centurion's Interrogatories,

Nos. 4, 5.) After the sexual abuse, ██████████████████████ but refused

to see Dr. Benoit again for it. (*Id.*) Recalling what happened makes her extremely emotionally upset and distressed. (*Id.*)

30.    Disputed to the extent that "nurse" would be a Registered Nurse (RN) or other advanced degree such as Advanced Practice Registered Nurse (APRN) as opposed to a Certified Nursing Assistant (CNA) or Licensed Practical Nurse (LPN) who signed the appointment forms.

31.    Admitted that Tashara Jackson was in the exam room with Anderson during the 2019 appointment but disputed that she was an appropriate "chaperone." *See* disputed facts in ¶¶ 28, 30, *supra*.

32.    Admitted that Ms. Booe signed a form indicating she was present in the exam room on that date but disputed that she was an appropriate "chaperone." *See* disputed facts in ¶¶ 28, 30, *supra*.

33.    Disputed that Ms. Booe had adequate training in gynecological care necessary to detect improper conduct during a gynecological exam. S*ee* disputed facts in ¶¶ 28, 30, 32 *supra*.

34.    Disputed. Anderson reported the sexual abuse to: ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ (Doc. 134-4 (Anderson Resp. to Benoit's Interrogatories), Nos. 3, 5,

6

11; *id.* (Anderson Resp. to Centurion's Interrogatories), Nos. 4, 5.) All these individuals were Centurion employees or contractors.

35.    Plaintiffs dispute the characterization of Luongo's report of sexual abuse which takes it out of context and is incomplete. During a gynecological appointment on January 8, 2021, at the Lowell CI Annex, ███████████

███████████████████████████

███████████████████████████

(Doc. 134-5 (Luongo Resp. to Benoit's Interrogatories), Nos. 3, 5, 11; *id.* (Luongo Resp. to Centurion's Interrogatories), Nos. 4, 5); Doc. 134-11 (Luongo OIG recorded interview); Doc. 115-4 (Third Party PREA grievance); Doc. 115-5 (Luongo OIG PREA Records), pp. 340-382); Doc. 121-1 (Nattell Rep.), pp. 7-12); (Doc. 115-6 (Luongo Dep.), 43:12-44:12; 45:12-16, 47:11, 48:21-23; 49:14-22; 57:4-19.) ███████████████████

███████████████ (*Id.*) ███████████

███████████████████████████

███████████ (*Id.*) ███████████████████ (*Id.*)

███████████████████████████

███████ (*Id.*) She refused to see him again for gynecology. After Dr. Benoit sexually assaulted Ms. Luongo, ███████████████████

███████████████████████. (Ex. 2

7

(Luongo Resp. to Benoit's Interrogatories), Nos. 3, 5, 11; *id.* (Luongo Resp. to
Centurion's Interrogatories), Nos. 4, 5); Ex. 12 (Luongo refusals), FDC 7521, FDC
7543, FDC 7538, FDC 7523, FDC 7527, FDC 7530.) ███████████████

████████████████████████ (*Id.*)

36.    Plaintiffs dispute which assistant was in the exam room during Ms.
Luongo's appointment. ████████████████████████

████████████████ (Doc. 115-7, p. 2.) In a sworn interview, Ms. Tuyin told
the Office of the Inspector General (OIG) ████████████████

████████████████████████████

(Doc. 115-5, FDC 12810, p. 354.) Ms. Tuyin also told the OIG that ██████████

████████████████████████████

████████████████ (*Id.*) Plaintiffs admit Valme and Matamoros are
female (Doc. 100, ¶ 11); Plaintiffs dispute that either was an appropriate
"chaperone." *See* disputed facts in ¶ 28, *supra*.

37.    Disputed. *See* disputed facts in ¶ 36, *supra*.

38.    Plaintiffs dispute the characterization of Luongo's testimony about
her report of sexual abuse which is incomplete and inaccurate. Luongo testified
████████████████████████████. (Doc. 115-6 (Luongo
Dep.), 67:15-69:24.) ████████████████████████

████████████████████████

 (Doc. 134-5 (Luongo Resp. to Benoit's Interrogatories), Nos. 3, 5, 11; *id.* (Luongo Resp. to Centurion's Interrogatories), Nos. 4, 5.)

39.   Disputed. Ms. Crowley's medical records show ███████████ ███████████████████████████████ (Doc. 134-6, CENT 001275-76 (7/2/21 visit; *id.*, FDC 9035 (9/3/21 visit); *id.*, CENT 001264 (2/18/22 visit); *id.*, PLS0004029-30 (2/16/23 visit refusing care).

40.   Plaintiffs dispute the characterization of Crowley's report of sexual abuse which takes it out of context and is incomplete. █████████████ ████████████████████████████████████████████

(Doc. 134-7, (Crowley Resp. to Benoit's Interrogatories), Nos. 3, 5, 11; *id.* (Crowley's Resp. to Centurion's Interrogatories), Nos. 4, 5); Doc. 134-13 (Crowley OIG interview); Doc. 115-4 (Third Party PREA grievance); Doc. 115-5 (Crowley OIG PREA Records), pp. 164-210); Doc. 100-5, 48:8-49:4, 57:7-15, 84:18-23); Doc. 121-1 (Nattell Rep.), pp. 7-12.) ███████████ ████████████████████████████████████████████ ███████████████████████████ (*Id.*) ██████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ (Ex. 3 (Crowley refusals),

PLS004030, PLS004032, FDC 9513, PLS006404-05, FDC 9404.)

41.    Disputed. *See* disputed facts in ¶¶ 39-40, *supra*.

42.    Disputed. *See* disputed facts in ¶¶ 39-40, *supra*.

43.    Disputed. *See* disputed facts in ¶¶ 39-40, *supra*.

44.    Disputed as to the characterization of Crowley's testimony about her report of sexual abuse, which is incomplete. She did not file a PREA grievance before the third-party grievance because ████████████████████████

████████████████████████████████████████████████

████████ (Doc 115-8 (Crowley Dep.), 105:7-12; 106:13-14; 107:4-11; 108:21-109:9.)

45.    Plaintiffs dispute the characterization of Johnson's report of sexual abuse which is incomplete and minimizes the sexual assault. In 2020, Ms. Johnson had an appointment for a routine pap smear and breast exam with Dr. Benoit at the Lowell CI Annex where he sexually assaulted her. (Doc. 134-12 (Johnson Resp. to Benoit's Interrogatories), Nos. 3, 5, 11; (Ex. 6 (Meadows Resp. to Benoit's Interrogatories), Nos. 3, 5, 11);  Doc. 115-10 (Johnson Dep.), 55:3-58:21, 59:21-

60:4, 67:23-68:2, 72:13-73:13); Doc. 121-1 (Nattell Rep.), pp. 7-12.) ▮▮▮



(*Id.*)

(*Id.*)

(*Id.*)

46.    While there was no record produced for Ms. Johnson showing she had an examination with Dr. Benoit, (Doc. 100, ¶ 15), there were omissions and errors in Centurion's medical records. For example, Ms. Meadows testified ▮▮ ▮t (Doc. 100-2, 43:24-44:1); however, her medical record only shows ▮▮▮ ▮▮ (Doc. 115-11.) (*See also* Ex. 11 (note records thinned), FDC 6281.) There is also a record of ▮▮▮ ▮▮▮ (Doc. 134-16 (Johnson refusal).)

47.    Disputed. *See* disputed facts in ¶¶ 45, 46, *supra*.

48.    While Plaintiffs admit that Ms. Johnson testified ██████████ ████████ (Doc. 100, ¶ 12), she later submitted an errata clarifying that she was confused because the questioning involved two separate providers (Benoit and Dr. Rodriguez), and that she could not remember his race. (Doc. 101-1.)

49.    Disputed. *See* disputed facts in ¶ 48, *supra*. Plaintiffs' expert, Dr. Noah Nattell, also testified that ████████████████████████ ██████████████████ (Doc. 100-8 (Nattell Dep.), 54:5-11.)

50.    Disputed. Ms. Johnson filed a grievance about the sexual assault when she filed this action. (Doc 5.) She did not file a grievance while incarcerated because ████████████████████████████████.[1] (Doc. 115-10 (Johnson Dep.), 69:22-70:5; 83:23-84:6.)

51.    Plaintiffs dispute the characterization of Meadows' report of sexual abuse which is incomplete and minimizes the sexual assault. Meadows had a gynecology appointment with Dr. Benoit at the Lowell CI Annex on December 16, 2021, where he sexually assaulted her. (Ex. 6 (Meadows Resp. to Benoit's Interrogatories), Nos. 3, 5, 11; *id.* (Meadows Resp. to Centurion's Interrogatories), Nos. 4, 5; Doc. 100-2, 51:4-5; 51:15-17; 52:1-6; 52:17-20; 52:22-53:7; 67:2-9;

---

[1] And Ms. Johnson was right about that. Plaintiffs and other victims filing grievances against Dr. Benoit did not result in Centurion taking any action whatsoever to protect them from harm. It was only until this lawsuit was filed that Centurion decided to suspend Dr. Benoit.

73:6-7; 74:18-21; 76:6-14; 80:5-8; 87:16-24); Doc. 121-1 (Nattell Report) pp. 7-12.) ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ (*Id.*)

████████████████████████████████████ (*Id.*)

52.    Admitted.

53.    Disputed. Meadows told ████████████████████

████████████████████████████████████████████████

████████████ (Doc 115-11 (Meadows Dep.), 126:20- 127:7.) She did not file a

grievance in prison because ███████████████████████████. (*Id.*,

112:19-113:5.) She reported the sexual assault when she filed this action. (Doc 5.)

54. Disputed. *See* disputed facts in ¶ 53, *supra*.

55. Admitted.

56. Admitted.

57. Admitted.

58. Disputed. Ms. Hopkins testified that her training "should be up to

date." (Doc 109-3  (Hopkins Dep.), 46:12-21.)

59. Disputed. Hopkins has no job responsibilities related to the Prison

Rape Elimination Act (PREA) and received no instruction about how to prevent

sexual abuse or sexual harassment in the workplace. (*Id.*, 48:25-49:23, 50:6-51:6.)

She testified that she would not report a provider for conducting an unnecessary

breast exam or anal exam due to not being able to assess whether these exams

would be unnecessary. (*Id.*, 62:7-63:18.)

60. Disputed. *See* disputed facts in ¶ 59, *supra*. Ms. Crowley told ████

████████████████████████████████████████ (Doc.

115-8 (Crowley Dep.), 31:1-4.)

61. Disputed. Plaintiffs did not consent to be sexually abused by

14

Defendant Benoit during gynecological appointments where he purported to do an examination. *See* disputed facts in ¶¶ 17, 29, 35, 38, 40, 45, 51, *supra*.

62.    Disputed as Centurion has no written policy or practice, no requirement, and provides no formal training about "female chaperones" for all gynecological examinations. *See* disputed facts in ¶ 28, *supra*.

63.    Disputed. *See* disputed facts in ¶¶ 28, 62. Ms. Johnson also testified

█████████████████████████████████████████████████████████

(Doc. 115-10, 56:11-19.)

64.    Disputed. Crowley testified ████████████████████████████

████████████████████████████████████ (Doc. 115-
8 (Crowley Dep.), 31:14-24.)

65.    Disputed. In her sworn statement to the OIG investigator, she told

him ██████████████████████████████ (Doc. 125-2 (12-13-
23 Hopkins, Chanel_Redacted Interview), 0:04:28-0:04:48.)

66.    Disputed. *See* disputed facts in ¶¶ 17, 29, 35, 38, 40, 45, 51, *supra*. The witness lacks personal knowledge of most of the incidents.

67.    Disputed. *See* disputed facts in ¶¶ 28, 59, *supra*.

68.    Disputed. *See* disputed facts in ¶ 60 *supra*.

69.    Disputed. The witness lacks personal knowledge of the total number of refusals for gynecology care at Lowell CI during the period at issue. (Doc. 109-

3 (Hopkins Dep.), 161:2-8.)

70.   Admitted.

71.   Admitted.

72.   Admitted.

73.   Disputed. *See* disputed facts in ¶¶ 28, 63, *supra*.

74.   Disputed. Ms. Matamoros (formerly, Ms. Tuyin) gave sworn testimony to the OIG investigator that ██████████████████████████

██████████████████████████████████████████████████

(Doc. 134-8 (Witness Interview - CNA Tina Matamoros (Tuyin)_Redacted), 00:02:50-00:03:30.)

75.   Disputed. Ms. Luongo testified ████████████████████

████████████████████ (Doc. 115-6 (Luongo Dep.), 53:2-5.)

76.   Disputed. *See* disputed facts in ¶¶ 28, 36, *supra*.

77.   Disputed. *See* disputed facts in ¶¶ 28, 35-36, *supra*. *See also* Doc. 121-1 (Nattell Report), at p. 7.)

78.   Disputed. *See* disputed facts in ¶¶ 28, 35-36, *supra*. (*See also* Doc. 121-1 (Nattell Report), at p. 7.) ████████████████████

██████████████████████████████████████████████████

████████████████████████████

79.   Disputed. Ms. Matamoros testified that patients told her that they did

not want to see Dr. Benoit because he was "rough" with them. (Doc. 109-4 (Matamoros Dep.), 62:17-23.) Ms. Matamoros did not hear from patients that other gynecological providers were "rough." (*Id.*, 66:16-25.)

80.    Disputed as Ms. Luongo testified that ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████  *See* disputed facts in ¶ 35; (Doc. 109-4 (Matamoros Dep.), 55:19-57:8.) (*See also* (Doc. 121-1 (Nattell Report), at p. 7; Doc. 121-2 (Nattell Dep.), 122:21-124:5.) Matamoros testified several patients told her that they refused care with Dr. Benoit due to him being "rough" but she did not report or even discuss these refusals with her supervisor. (Doc. 109-4 (Matamoros Dep.), 62:17-23, 66:5-11.)

81.    Admitted.

82.    Disputed. *See* disputed facts in ¶ 28, *supra*.

83.    Disputed. *See* disputed facts in ¶ 28, *supra*. Also, Centurion did not produce such a written policy or procedure because none exists.

84.    Disputed. Plaintiffs informed Centurion staff of the sexual abuse but they did not report it. *See* disputed facts in ¶¶ 34, 38, 44, 53, *supra*. DOJ also found widespread violations of sexual abuse and PREA policies at Lowell CI, including about reporting issues. (Doc. 133-17 (DOJ Report), pp.18-30).)

17

85.     Disputed. Plaintiff Anderson ██████████████████████████████████.

(Doc. 134-14 (Anderson records), pp. 17-18, 22; Doc. 115-1 (Anderson Dep.), 85: 17-86:9.) Plaintiffs also told Centurion employees about the sexual abuse but they did not report it. *See* disputed facts in ¶¶ 34, 38, 44, 53, *supra*.

86.     Disputed.  *See* disputed facts in ¶¶ 34, 38, 44, 53, 85, *supra*.

87.     Admitted.

88.     Admitted.

89.     Admitted.

90.     Admitted.

91.     Disputed. *See* disputed facts in ¶¶ 34, 38, 44, 85, *supra*.

92.     Disputed. When the person accused is a prisoner or a corrections officer, the FDC takes steps to separate the alleged victim from the alleged perpetrator. Doc. 109-1 (FDC PREA Procedure), Sec. 602.053(4)(a)2., p. 11, PLS005385.) But, when Dr. Benoit, a Centurion employee, was accused of PREA violations by multiple patients, no steps were taken to prevent him from continuing to see these patients while investigations were pending. In fact, the patients were told ████████████████████████████████. (*See* Doc. 115-1 (Anderson Dep.), 55:13-56:2; Doc. 115-8 (Crowley Dep.), 101:18-21; Doc. 134-6, p. 39, PLS006404.) ████████████████████████████

████████████████████████████████████████████

███████████. *See* ¶ 122 *infra*.

93.    Disputed. *See* disputed facts in ¶ 34 *supra*.

94.    Disputed. *See* disputed facts in ¶ 34, *supra*. Lambert also testified she may have spoken with Anderson and Crowley about their refusals to see Benoit and that patients said they did not want to see Benoit. (Doc. 109-5 (Lambert Dep.), 124:8-19; 127:3-7; Doc. 134-19 (refusals), p. 16, CENT 005147.)

95.    Disputed. *See* disputed facts in ¶¶ 34, 94, *supra*.

96.    Admitted.

97.    Admitted.

98.    Admitted.

99.    Disputed. Hamilton did not state that Dr. Benoit always had a chaperone present for invasive procedures. (Doc. 109-6 (Hamilton Dep.), 37:17-19) ("when we did anything invasive, we *usually* assisted."); 37:14-22 (assisted with only two breast exams).

100.    Admitted, but omits that Anderson ███████████████ ███████████ (Doc. 109-6, (Hamilton Dep.), 43:10-21.)

101.    Disputed. More than five patients told Hamilton they did not want to see Benoit. (Doc. 109-6 (Hamilton Dep.), 49:15-19.)

102.    Disputed. *See* disputed facts in ¶¶ 100, 101, *supra*.

103.    Disputed. (*See* Doc. 109-6 (Hamilton Dep.), 63:22-64:2) ("I didn't

have the greatest understanding . . ."); 68:12-17 (remembers nothing from training).

104.  Admitted.

105.  Admitted.

106.  Disputed. *See* disputed facts in ¶¶ 34, 38, 44, 53, 85, 100, *supra*.

107.  Disputed. The cited testimony was contradicted by ███████████

██████████████████████████████████████████████████████████████

██████████████████████████████████ (Ex. 1 (Centurion emails).)

108.  Disputed. Centurion routinely received copies of final OIG reports, reviewed them, and would know if its employee was called as a witness by the OIG. (Doc. 109-7 (R. 30(b)(6) Dep.), 86:19-87:7; 90:5-8; 101:20-23; 103:3-10; 117:25-118:8.)

109.  Disputed to the extent the statement contradicts testimony referenced in paragraph 108, supra. *See also* disputed facts in ¶ 24, *supra*.

110.  Disputed with respect to the facts that Centurion routinely received copies of final OIG reports and reviewed them. (Doc. 109-7 (R. 30(b)(6) Dep.), 86:19-87:7; 101:20-23; 103:7-18; 117:25-118:8.)

111.  Admitted.

112.  Disputed. Centurion suspended Dr. Benoit without pay even though the OIG investigations for ████████████████████████████████. (Doc.

115-5 (PREA records), p. 97, FDC 12770; p. 182, FDC 12683; p. 356, FDC 12812.)

113.    Admitted that Centurion suspended Benoit with pay; disputed that Centurion was not aware of the sexual abuse allegations against Benoit before this lawsuit. (Ex. 1 (Centurion emails); Doc. 109-7 (R. 30(b)(6) Dep.), 202:23-203:6; Doc. 115-5 (PREA records); Doc. 115-15, (Centurion emails 2018), p. 3; Doc. 134-19 (DOJ related).) *See also* disputed facts in ¶¶ 34, 38, 44, 53,107-108, 110, *supra*.

114.    Disputed. Centurion refuses to disclose its reasons for its decisions to suspend or terminate Benoit, purportedly based on attorney-client privilege. (Doc. 109-7 (R. 30(b)(6) Dep.), 193:13-24;197:17-198:4; Ex. 2 (emails about Benoit employment). The emails indicate ███████████████████████ ███████████████████████████████████.

115.    Disputed. Centurion employees and corporate representatives failed to report, or timely report, sexual abuse by Defendant Benoit from Plaintiffs and other victims and allowed the sexual abuse to occur. (Ex. 1 (Centurion emails); Doc. 115-5 (Centurion emails 2018).) *See also* disputed facts in ¶¶ 21, 29, 34, 35, 38, 40, 45, 51, 53, *supra*.

116.    Plaintiffs received over 70,000 pages of discovery, not 75,000 unique documents. (*See* Doc. 76.)

117.    Disputed to the extent that Centurion claimed certain custodians had email search results, but no emails were produced for them. (Doc. 76.)

118.    Disputed. *See* disputed facts in ¶¶ 20, 21, 29, 34, 35, 38, 40, 45, 51, 53, 115, *supra*.

119.    Disputed. Of the 11 OIG files involving PREA reports against Defendant Benoit, the OIG findings were ███████████████████████ ████████████████████████. *See, e.g.,* Doc. 115-5 (PREA records), p. 97, FDC 12770; p. 182, FDC 12683; p. 356, FDC 12812.

120.    Admitted.

121.    Admitted.

122.    Disputed. ████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████ (Doc. 115-5 (PREA records), p. 407, FDC 12420; pp. 411-415, FDC 12424-FDC 12428; Ex. 3 (McCoy OIG interview), 12:00-12:55.)

123.    Disputed that the OIG conducted an adequate investigation. ████████ ████████████████████ *See* disputed facts in ¶¶ 20, 21, 122, *supra*.

124.    Admitted.

125.    Admitted.

126.    Disputed. *See* disputed facts in ¶¶ 20, 21, 28, *supra*.

127.    Disputed as to the omission of ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ (Ex. 4 Lafont OIG

interview), 3:00-3:50; Doc. 115-5 (PREA records), p. 248, FDC 12462.)

128.    Disputed. ████████████████████████████████████

████████████ (Ex. 4 (Lafont OIG interview), 2:00-3:00.)

129.    Disputed. The OIG ██████████████████████. (Doc. 115-5,

p. 269, FDC 12483.)

130.    Disputed as to mischaracterization and omission of facts. ████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████ (Doc. 115-13, FDC 12171.) ████████████

████████████████████(*Id.*)

131.    Disputed. The sexual abuse should have been reported by the

assistants present when it occurred. (*Id.*)

132.    Disputed. *See* disputed facts in ¶¶ 20, 21, *supra*.

133.    Disputed. ████████████████████████████████████

███████████████████████████████████████████████████

 (Doc. 115-5, pp. 124-128; FDC 12558-FDC 12562; Ex. 5 (Bigler OIG interview). ████████████

. (*Id.*)

134.    Disputed. The sexual abuse should have been reported by the assistants present when it occurred but was not. (Doc. 115-5 (PREA records), p. 120, FDC 12554.)

135.    Disputed. *See* disputed facts in ¶¶ 20, 21, 28, *supra*.

136.    Disputed as to the omission of the fact that ███████████

███████. (Doc. 115-5 (PREA records), p. 126, FDC 12560.)

137.    Disputed. *See* disputed facts in ¶ 28, *supra*. Hopkins told the OIG investigator that she could not recall that specific appointment. (Doc. 126-3 (Hopkins OIG interview), 1:00-1:15.)

138.    Disputed as to adequacy of investigation and Centurion's reliance on

---

[2] During a colposcopy like this, a provider uses an iodine solution on the cervix to visualize any lesions. This does not involve stroking the vagina or buttocks. *See* https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/cervical-biopsy

it. *See* disputed facts in ¶¶ 20, 21, *supra*.

139. Disputed as to Centurion's speculation about why the PREA third-party grievances were made. Plaintiffs assert attorney-client privilege. Plaintiffs also testified ███████████████████████████████████████

███████████████████████████████████████████████████████

███████ (Doc. 115-1 (Anderson Dep.), 29:10-20, 100:8-14, 101:8-9, 101:23-102:5; Doc. 115-8 (Crowley Dep.), 105:4-10, 108:1-109:1; Doc. 115-10 (Johnson Dep.), 69:22-70:5; 84:2-6; Doc. 115-11 (Meadows Dep.), 112:19-113:4; Doc. 115-6 (Luongo Dep.), 69:7-24.) *See* disputed facts in ¶¶ 20, 21, *supra*.

140. Admitted.

141. Disputed as to adequacy of OIG investigation and "chaperone nurses." *See* disputed facts in ¶¶ 20, 21, 28, 36, *supra*.

142. Disputed. The OIG ██████████████████████. (Doc. 115-5, p. 356, FDC 12812; p. 358, FDC 12814.)

143. Admitted.

144. Disputed as to adequacy of OIG investigation and "chaperone nurse." *See* disputed facts in ¶¶ 20, 21, 28, *supra*. Disputed through expert testimony. (Doc. 121-1 (Nattell Report), at p. 7; Doc. 121-2 (Nattell Dep.), 122:21-124:5.) While Ms. Wallace "categorically rejected" Ms. Crowley's allegations, (Doc. 100, ¶ 30) she also went out of her way to unnecessarily disparage Ms.

Crowley during the interview. (Doc. 100-9 (Wallace OIG interview), 62:22-62:24 ("[O]ut of 3,500 inmates, and you remember someone that is a constant complainer. I mean that says a lot I think. [laughs]"); Doc. 100-8, 59:22-23 ("I will tell you this. Inmate Crowley complains about everything.")). Plaintiffs' expert, Dr. Nattell, noted that this indicated to him that Ms. Wallace had a "bias" against the patient, which he found "disturbing." (Doc. 100-8 (audio during Nattell Dep.), 63:22-24.)

145.    Disputed. The OIG ███████████████. (Doc. 115-5, p. 184, FDC 12685; p. 182, FDC12683.)

146.    Disputed. *See* disputed facts in ¶ 139, *supra*.

147.    Admitted.

148.    Admitted.

149.    Disputed. *See* disputed facts in ¶ 139, *supra*.

150.    Disputed. The OIG ███████████████. (Doc. 115-5 (PREA records), FDC p. 51, FDC 12727; p. 53, FDC 12729.)

151.    Disputed. *See* disputed facts in ¶ 139, *supra*.

152.    Admitted.

153.    Disputed as to mischaracterization and omission of facts. During a gynecological appointment in 2018 at Lowell CI, ███████████████

███████████████

26



(Doc. 115-5 (Gibson PREA records), pp. 212-213, FDC 12569-70; *id.*, pp. 220-221, FDC 12577; *id.*, 227, FDC 12584; Ex. 6 (Gibson OIG interview).)

(*Id.*)

154. Disputed. The OIG ███████████████████. (Doc. 115-5 (PREA records), p. 229, FDC 12586; p. 231, FDC 12588.)

155. Disputed. *See* disputed facts in ¶ 139, *supra.*

156. Admitted.

157. Disputed as to mischaracterization and omission of facts. during an annual gynecology appointment at Lowell CI Annex, ████████████

██████████████ (Doc. 115-5 (PREA records), p. 451, FDC 12607; *id.*, 455, FDC 12610; *id.*, p. 462, FDC 12618; Ex. 7 (Rodrigues OIG interview).)

(*Id.*)  (*Id.*)

(*Id.*)

158. Disputed. Ms. Valme justified or rationalized the sexually abusive

conduct that "milking" nipples during an exam is medically appropriate. (Doc.

126-2 (Valme OIG interview), 00:04:52-00:05:04.) Ms. Valme did not recall the

specific appointment with ███████████. (Doc. 115-5 (PREA records), pp. 462-

463, FDC 12618-FDC 12619.) Also disputed as to adequacy of OIG investigation

and "chaperone nurses." *See* disputed facts in ¶¶ 20, 21, 28, 36, *supra*.

159.    Disputed. *See* disputed facts in ¶¶ 20, 21, 28, 36, 158, *supra*.

160.    Disputed. Ms. Ault was not present for the specific appointment with

███████████, nor did ███████████ have a complaint about nipple discharge.

(Doc. 115-5 (PREA records), p. 463, FDC 12619.) *See also* disputed facts in ¶¶ 20,

21, 28, 158, *supra*.

161.    Disputed as to adequacy of OIG investigation. *See* disputed facts in ¶¶

20, 21, *supra*.

162.    Admitted.

163.    Disputed. *See* disputed facts in ¶ 113, *supra*.

164.    Disputed. No record cite is provided, nor does it reflect after what

date Dr. Benoit did not return to Lowell CI.

### **PLAINTIFFS' ADDITIONAL DISPUTED MATERIAL FACTS**

165.    ███████████ at Lowell CI reported ███████████████████

███████████████████████████ (Doc. 115-4; Doc. 115-5; Doc. 115-13;

(Doc. 134-12 (Johnson Resp. to Benoit's Interrogatories), Nos. 3, 5, 11; (Doc. 134-

9 (Meadows Resp. to Benoit's Interrogatories), Nos. 3, 5, 11.)

166.

██████████████████████████████████████████████████

████████████████████████████. (Doc. 115-5; Doc. 115-1 (Anderson Dep.),

42:17-43:3; Doc. 115-6 (Luongo Dep.), 30:6-31:3; Doc. 115-8 (Crowley Dep.),

29:10-30:6; Doc. 115-10 (Johnson Dep.), 36:10-18; Doc. 115-11 (Meadows Dep.),

34:7-14.)

167. Over half of the OIG investigations that Centurion states the OIG

found to lack merit, were ████████████████████████. (Doc. 115-5 (PREA

records), pp. 229-230, FDC 12586-87 (Gibson); pp. 51-52, FDC-12727-28, 94-95,

FDC 12770-71 (Anderson); p. 269, FDC 12483 (Lafont); pp. 356-357, FDC

12812-13 (Luongo); pp. 182-183, FDC 12683-84 (Crowley).

168. The OIG conducted ████████████████████████

████████████████████████. (*Id.*) Those investigations were

██████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████ (*Id.*; *see*

*also* Doc. 109-1 (FDC PREA Procedure), pp. 21-23, PLS005395-96; *id.*, p. 30,

PLS005404.)

29

169. Centurion does not monitor its compliance with PREA. (Doc. 109-7 (R. 30(b)(6) Dep.), 58:20-23.)

170. Although Centurion reviewed the DOJ report, it continued to rely on inadequate and ineffective OIG investigations. (Doc. 109-7 (R. 30(b)(6) Dep.), 208:20-23, 209:15-22; (Doc. 133-17 (DOJ Report), pp. 4, 13-33.)

171. Centurion ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ (Doc. 134-18.)

172. Centurion officials at Lowell CI ████████████████████████

████████████████████████ (*Id.*, CENT 005147.)

173. ████████████████████████████████████

████████████████████████Doc. 100-1, 58:17-59:1; Doc. 115-11

Meadows Dep.), 101:24-102:7; Doc. 115-6 (Luongo Dep.), 63:19-64:11; Doc. 115-10 (Johnson Dep.), 50:7-52:1.)

Dated: October 22, 2025

Respectfully submitted,

By:    /s/ Andrea Costello
Andrea Costello
Fla. Bar No. 0532991
Samantha Shaw
Fla. Bar No. 109768
Florida Legal Services
P.O. Box 533986
Orlando, FL 32853

30

Telephone: (407) 801-0332 (direct)
Fax: (407) 505-7327
andrea@floridalegal.org
samantha.shaw@floridalegal.org

Dante P. Trevisani
Fla. Bar No. 72912
Erica S. Downs
Florida Bar No. 120581
Florida Justice Institute, Inc.
40 N.W. 3rd Street, Suite 200
Miami, FL 33128
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
edowns@fji.law

**Attorneys for Plaintiffs**